[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14650

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

*versus*

JULIAN GARCON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cr-80081-JIC-1

_____

Before WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge, delivered the opinion of the Court, in which WILSON, JILL PRYOR, NEWSOM, LUCK, and LAGOA, Circuit Judges, join.

ROSENBAUM, Circuit Judge, filed an opinion concurring in the judgment.

NEWSOM, Circuit Judge, filed a concurring opinion, in which LAGOA, Circuit Judge, joins.

JORDAN, Circuit Judge, filed a dissenting opinion.

BRANCH, Circuit Judge, filed a dissenting opinion, in which GRANT and BRASHER, Circuit Judges, join, and JORDAN, Circuit Judge, joins as to Part I, II, III.A, and III.B.

BRASHER, Circuit Judge, filed a dissenting opinion.

WILLIAM PRYOR, Chief Judge:

The question presented in this appeal of a grant of safety-valve relief is whether, in the First Step Act, the word "and" means "and." The Act empowers a court to grant a criminal defendant relief from a mandatory minimum sentence, but that relief is available only if "the defendant does not have" "more than 4 criminal history points," "a prior 3-point offense[,] . . . *and* . . . a prior 2-point violent offense." 18 U.S.C. § 3553(f)(1) (emphasis added). Julian Garcon, who pleaded guilty to attempting to possess

500 grams or more of cocaine with intent to distribute, has a prior 3-point offense but does not have more than 4 criminal history points or a prior 2-point violent offense. The district court concluded that Garcon remained eligible for relief under the Act because he did not have all three characteristics. We agree. Because the conjunctive "and" joins together the enumerated characteristics, a defendant must have all three before he is ineligible for relief. We affirm.

## I.  BACKGROUND

Julian Garcon was indicted in 2019 for attempting to possess 500 grams or more of cocaine with intent to distribute. *See* 21 U.S.C. §§ 841(a), 846. The offense carried a statutory minimum sentence of five years' imprisonment. *See id.* § 841(b)(1)(B)(ii). Garcon pleaded guilty.

At sentencing, Garcon asked the district court to apply the so-called "safety valve" of the First Step Act, 18 U.S.C. § 3553(f). Section 3553(f) provides that, for certain crimes, including the crime Garcon committed, the sentencing court "shall impose a sentence pursuant to [the United States Sentencing] [G]uidelines . . . without regard to any statutory minimum sentence, if the court finds at sentencing" that the defendant satisfies each of five numbered subsections. *See id.* § 3553(f)(1)–(5). The first subsection—the requirement in dispute here—provides as follows:

(1) the defendant does not have—

(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B) a prior 3-point offense, as determined under the sentencing guidelines; and

(C) a prior 2-point violent offense, as determined under the sentencing guidelines[.]

*Id.* § 3553(f)(1).

Garcon has a prior 3-point offense, and the parties disagreed about whether that prior offense disqualified Garcon from receiving safety-valve relief. Garcon argued that the use of the conjunctive "and" to join the subsections, *see id.* § 3553(f)(1)(B), meant that he would be ineligible for relief only if he had more than 4 criminal history points, a prior 3-point offense, *and* a prior 2-point violent offense. And because he does not have a prior 2-point violent offense or more than 4 criminal history points, Garcon argued that he remained eligible for safety-valve relief. The government took the opposite view, arguing that Garcon was ineligible because, "if *any* of th[e] three [subsections] apply, . . . the defendant doesn't qualify for the safety valve . . . ." (Emphasis added.)

The district court agreed with Garcon. It ruled that "[t]he plain meaning of the statute requires all three subsections of [section] 3553(f)(1) to be met before the defendant becomes ineligible for [the] safety valve." To hold otherwise, the district

court explained, would require it to replace the word "and" with the word "or." And although it considered the "result" "absurd" and the legislative history supportive of the government's reading, the district court explained that those considerations did not alter its analysis because "[t]he statute, as written, is unambiguous." So, the district court applied the safety valve, calculated the applicable guidelines range, and imposed a sentence of 36 months' imprisonment.

A panel of this Court disagreed. *United States v. Garcon*, 997 F.3d 1301 (11th Cir. 2021). The panel reasoned that the word "and" in subsection (f)(1) means "or." *See id.* at 1305. We voted to vacate the panel opinion and to rehear the appeal en banc. *United States v. Garcon*, 23 F.4th 1334 (11th Cir. 2022).

## II.  STANDARD OF REVIEW

"We review *de novo* questions of statutory interpretation." *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020).

## III. DISCUSSION

We divide our discussion in two parts. We first explain why Garcon was eligible for safety-valve relief despite his prior 3-point offense. We then reject the government's arguments to the contrary.

### A.  *"And" Means "And."*

We begin, as we must, with the text of the statute. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). And we are guided in our

interpretation of the text by the ordinary-meaning canon, "the most fundamental semantic rule of interpretation." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6, at 69 (2012). The command of the canon is simple: "our job is to interpret the words consistent with their ordinary meaning at the time Congress enacted the statute," *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (alteration adopted) (internal quotation marks omitted), "unless the context in which the word[s] appear[]" suggests some other meaning, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012).

The parties' dispute turns on the meaning of the word "and" in section 3553(f)(1), so we consider the ordinary meaning of that word. "And" means "along with or together with." *And*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1993). So when "and" is used to connect a list of requirements, the word ordinarily has a "conjunctive" sense, meaning that all the requirements must be met. *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620–21 (2021). For example, if a statute provides, "You must do A, B, and C," it is not enough to do only A, only B, or only C; "all three things are required"—A, together with B, together with C. *See* SCALIA & GARNER, *supra*, § 12, at 116.

The word "and" retains its conjunctive sense when a list of requirements follows a negative. *See id.* § 12, at 119. Consider the prohibition, "You must not drink and drive." To comply, a person may do either activity by itself but may not do both. *Id.*; *see also United States v. Palomares*, 52 F.4th 640, 653 (5th Cir. 2022)

19-14650                Opinion of the Court                7

(Willett, J., dissenting). Similarly, consider the command, "You must not do A, B, and C." A person violates that prohibition only by doing all three prohibited acts—by doing A, together with B, together with C. *See* SCALIA & GARNER, *supra*, § 12, at 119. A person who does only A, only B, or only C is in the clear.

Applying these principles to section 3553(f)(1), Garcon's prior 3-point offense does not disqualify him from safety-valve relief. Section 3553(f)(1) begins with a negative—"the defendant does not have"—and the three requirements that follow are joined by an "and." *See* 18 U.S.C. § 3553(f)(1). So a defendant runs afoul of the provision and loses eligibility for relief only if all three conditions in subsections (A) through (C) are satisfied. That is, to lose eligibility for relief, a defendant must have "more than 4 criminal history points, excluding any . . . 1-point offense," together with "a prior 3-point offense," together with "a prior 2-point violent offense." *See id.* Because Garcon has a prior 3-point offense but does not have 4 criminal history points (excluding any 1-point offense), or a prior 2-point violent offense, he is eligible for safety-valve relief.

Context confirms this reading. Ordinarily, we presume that "identical words used in different parts of the same act are intended to have the same meaning." *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 319 (2014) (internal quotation marks omitted). The five numbered subsections of section 3553(f) are joined by the word "and" in subsection (f)(4):

[T]he court shall impose a sentence pursuant to [the] guidelines . . . if the court finds at sentencing . . . that—

(1) the defendant does not have—

(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B) a prior 3-point offense, as determined under the sentencing guidelines; and

(C) a prior 2-point violent offense, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . ; *and*

(5) . . . the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense . . . .

18 U.S.C. § 3553(f) (emphasis added). The parties agree that the "and" used to join the larger list is conjunctive. *See also Palomares*,

52 F.4th at 654 (Willett, J., dissenting). That is, the sentencing court must find that a defendant satisfies each of subsections (f)(1) through (f)(5) before it may depart from a statutory minimum sentence. Because the "and" in subsection (f)(4) is conjunctive, the presumption of consistent usage instructs us to presume that the word "and" has the same sense when the word appears in subsection (f)(1). *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (explaining that the "presumption that a given term is used to mean the same thing throughout a statute" is "at its most vigorous when a term is repeated within a given sentence").

Another aspect of the presumption of consistent usage is the principle that, ordinarily, "a material variation in terms suggests a variation in meaning," SCALIA & GARNER, *supra*, § 25, at 170, and this principle too supports our interpretation. When conditions in section 3553(f) are disjunctive, the statute employs the word "or." For example, the statute provides that a defendant is eligible for safety-valve relief only if he "did not use violence *or* credible threats of violence *or* possess a firearm *or* other dangerous weapon . . . in connection with the offense." 18 U.S.C. § 3553(f)(2) (emphases added). In other words, any one of the conditions—violence, credible threats, *or* possession—is disqualifying. Similarly, the statute provides that relief is available only if "the defendant was not an organizer, leader, manager, *or* supervisor of others in the offense." *Id.* § 3553(f)(4) (emphasis added). Again, it is disqualifying to have performed any one of the listed roles. Because the statute uses a negative followed by the disjunctive "*or*" to convey that

19-14650          Opinion of the Court          10

satisfaction of a single condition in a list is disqualifying, we presume a variation in meaning when the statute employs a negative followed by the conjunctive "*and*."

Our reading is also buttressed by the Senate's legislative drafting manual, which "support[s] a conjunctive interpretation of [section] 3553(f)(1)'s 'and.'" *United States v. Lopez*, 998 F.3d 431, 436 (9th Cir. 2021); *cf. Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60–61 (2004) (relying on "standard interpreting guides," including the House and Senate legislative drafting manuals, to interpret a statute). The manual instructs drafters on the proper use of "and" and "or," directing them to use "and" as a conjunctive and "or" as a disjunctive:

> IN GENERAL.—In a list of criteria that specifies a class of things—
>
> (1) use "or" between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria; and
>
> (2) use "and" to indicate that a thing is included in the class only if it meets all of the criteria.

Senate Off. of the Legis. Couns., *Legis. Drafting Manual* § 302(a) (1997). This directive supports our interpretation that a defendant is ineligible for safety-valve relief only if he "meets all of the criteria" in section 3553(f)(1)—that is, only if he has all three prohibited conditions. *See id.*; *Lopez*, 998 F.3d at 436 ("[T]he Senate's own legislative drafting manual tells us that 'and' is used as a conjunctive in statutes structured like [section] 3553(f)(1).").

## B. "And" Does Not Mean "Or."

The government resists our reading. The government argues that, under a "distributive reading" of the word "and," any one of the prohibitions listed in section 3553(f)(1) is disqualifying. It argues that the interpretation by the district court results in surplusage. It argues that the absurdity doctrine counsels against that interpretation. And it argues that legislative history supports its interpretation. We address and reject each argument in turn. And we explain why we must reach the same conclusion even if there were some merit to the government's arguments.

### 1. The Government's "Distributive Reading" Is Unpersuasive.

Although the government concedes that "and" should be treated "as conjunctive," it argues that "a distributive reading offers the only natural interpretation of" section 3553(f)(1). Under this reading, "the negative prefatory phrase ['does not have'] distributes to modify each of the items severally," such that "a defendant is eligible for safety-valve relief under [section] 3553(f)(1) [only] if he does not have any of the listed criminal-history conditions." Essentially, the government invites us to read "and" to mean "or," even as it concedes elsewhere in its briefs that this reading is mistaken. Neither the government nor our dissenting colleagues offer any authority that adopts this novel reading of "and," other than recent decisions by our sister circuits that concern the same statutory provision. *United States v. Palomares*, 52 F.4th 640, 643–45 (5th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018, 1021–22 (8th Cir. 2022). We decline to adopt that novel reading when it

19-14650              Opinion of the Court                    12

appears to have been crafted by the government specifically for this statute to achieve its preferred outcome.

The government is asking us to inject the words "does not have" into the statute where they do not appear. In the government's view, the statute should essentially be read as follows: A defendant is eligible for the safety valve if he (A) does not have more than 4 criminal history points (excluding 1-point offenses); (B) does not have a prior 3-point offense; and (C) does not have a prior 2-point violent offense. But we must "take the provision as Congress wrote it, and neither add words to nor subtract them from it." *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999).

The government supplies examples of its distributive reading of the phrase "not . . . and," but those examples are unpersuasive. It gives as an example the advice, "To be healthy, you must not drink and smoke." And it asserts that a reader "would reasonably distribute the prefatory phrase 'you must not' to each item individually," in effect turning the conjunctive "and" into a disjunctive "or." To be sure, a reader might understand the "and" in the example as a disjunctive. "But that understanding has little to do with syntax and everything to do with our common understanding that" drinking and smoking can be harmful individually. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1174 (2021) (Alito, J., concurring in the judgment). So a reasonable reader might assume that the "and" was inserted inartfully in place of the more natural "or." Another of the government's examples—

19-14650                Opinion of the Court                13

the prohibition, "[y]ou must not lie, cheat, and steal"—is unpersuasive for the same reason. Indeed, it is no coincidence that the more common wording of the prohibition uses an "or" instead of an "and": "You must not lie, cheat, or steal." *See, e.g., Van Orden v. Perry*, 545 U.S. 677, 715 (2005) (Stevens, J., dissenting) ("The State may admonish its citizens not to lie, cheat, or steal . . . ."); *Andrews v. Knowlton*, 509 F.2d 898, 902 (2d Cir. 1975) ("The Cadet Honor Code in force at the United States Military Academy consists of a single maxim: 'A cadet does not lie, cheat or steal or tolerate those who do.'").

Nor does the government's position find support in the similarly named "distributive canon." The canon "recognizes that sometimes where a sentence contains several antecedents and several consequents, courts should read them distributively and apply the words to the subjects which, by context, they seem most properly to relate." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (alteration adopted) (internal quotation marks omitted); *see also* SCALIA & GARNER, *supra*, § 33, at 214 ("Distributive phrasing applies each expression to its appropriate referent."). For example, "a rule stating that '[m]en and women are eligible to become members of fraternities and sororities' cannot reasonably be read to suggest an unconventional commingling of sexes in the club membership." SCALIA & GARNER, *supra*, § 33, at 214. Put simply, application of the distributive canon is like inserting the word "respectively" at the end of two connecting lists. The canon has no application here because there is no list of

antecedents to match to a corresponding list of consequents—no series of lists that can be clarified with the word "respectively." *Cf. Facebook*, 141 S. Ct. at 1172 ("[T]he canon's relevance is highly questionable given there are two antecedents . . . but only one consequent modifier.").

2. The Ordinary Meaning of "And" Does Not Produce a Surplusage.

The government next contends that we should adopt its interpretation of section 3553(f)(1) to avoid rendering part of the section superfluous. The government asserts that a defendant who has "a prior 3-point offense," 18 U.S.C. § 3553(f)(1)(B), and a "prior 2-point violent offense," *id.* § 3553(f)(1)(C), will necessarily also have "more than 4 criminal history points," *see id.* § 3553(f)(1)(A). So, the government argues that a conjunctive reading of "and" would render subsection (f)(1)(A) superfluous in a way that a disjunctive reading would not. We disagree.

The superfluity argument has superficial appeal—after all, as our dissenting colleagues helpfully remind us, three plus two is more than four, Branch Dissenting at 16—but it rests on the mistaken premise that a defendant who satisfies subsections (f)(1)(B) and (f)(1)(C) will always satisfy subsection (f)(1)(A). To the contrary, there are at least two circumstances in which a defendant could have "a prior 2-point violent offense" and "a prior 3-point offense . . . under the sentencing guidelines" but fewer than five "criminal history points." *See* 18 U.S.C. § 3553(f)(1). Under the sentencing guidelines, a two-point offense adds no points to the

defendant's criminal-history score if the sentence was imposed more than 10 years before the defendant commenced the present offense. UNITED STATES SENTENCING GUIDELINES MANUAL § 4A1.1(b) & cmt. n.2 (Nov. 2018). Similarly, a three-point offense does not contribute to the criminal-history score if the defendant finished serving the sentence more than 15 years before commencing the present offense. Id. § 4A1.1(a) & cmt. n.1. So, for example, a defendant could have 20-year-old two-point and three-point offenses, satisfying subsections (B) and (C), but score zero criminal history points and fall below the threshold in subsection (A). See Palomares, 52 F.4th at 659 (Willett, J., dissenting).

The second circumstance in which a defendant could have two- and three-point offenses but fewer than five criminal history points occurs when the two- and three-point offenses are treated as a single sentence. The guidelines treat separate offenses as a single sentence for criminal-history purposes when the sentences result from offenses charged in the same instrument or when they were imposed on the same day. Id. § 4A1.2(a)(2). When separate offenses are counted as a single sentence, the district court calculates the term of imprisonment based on the longest sentence if the sentences were imposed concurrently or the total of both sentences if they were imposed consecutively. Id. So, for example, a defendant could have a two-point and a three-point offense charged in the same instrument, satisfying subsections (B) and (C), but score only three criminal history points and fall below the threshold in subsection (A).

The government argues that "if an offense is too old to score any points under the [g]uidelines, then it is not a 'prior [2- or] 3-point offense, as determined under the sentencing guidelines,'" *see* 18 U.S.C. § 3553(f)(1)(B), but the statute itself refutes this argument. Section 3553(f)(1)(A) directs courts to consider whether the defendant has "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense." That is, the subsection distinguishes between points associated with an "offense"—points that may or may not count towards the criminal history score—and the final tally of "criminal history points." The subsection would be nonsensical if the government were correct that offenses may have points associated with them only when those points contribute to the final criminal history score. The text forecloses that reading.

To be sure, our interpretation requires reading "prior 3-point" and "2-point violent offense[s]," *id.* § 3553(f)(1)(B)–(C), to include offenses that do not contribute to the total criminal-history score, but this reading is a function of the statutory text. The guidelines are not framed around "offenses"; they instead instruct sentencing courts to add points to the defendant's criminal-history score for his "prior sentence[s] of imprisonment." *See* U.S.S.G. § 4A1.1. So the meaning of "a prior . . . offense" must come from section 3553(f), not from the guidelines. *See* 18 U.S.C. § 3553(f) And, as we have explained, section 3553(f) distinguishes between "hav[ing] . . . criminal history points" and "hav[ing] . . . offense[s]." *See id.* Under the statute, criminal-history points are those that are

actually scored, and a three-point offense is one that *would* add three points to the score, all else being equal.

To the extent that the guidelines offer clues about the meaning of "a prior . . . offense," *id.*, the guidelines support our interpretation. Like section 3553(f)(1), the guidelines use the word "offense" to refer to convictions that may or may not contribute to a criminal history score. Section 4A1.2, for example, describes in what instances "offenses are counted." U.S.S.G. § 4A1.2(c). It provides that most "[s]entences for misdemeanor and petty offenses are counted," but then lists the "prior offenses and offenses similar to them" that "are never counted" or that "are counted only" in certain circumstances. *See id.* And like section 3553(f)(1), the guidelines delineate between the number of points for prior sentences and the calculation of a criminal history score. For example, under the guidelines, a "prior sentence of imprisonment exceeding one year and one month" is worth "3 points." *Id.* § 4A1.1(a). But that prior sentence is "not counted," *id.* § 4A1.1 cmt. n.1, toward "[t]he total points" of the criminal history score, *id.* § 4A1.1, if the "sentence [was] imposed more than fifteen years prior to the defendant's commencement of the instant offense," the prior "offense [was] committed prior to the defendant's eighteenth birthday," or the "sentence [was] for a foreign conviction, a conviction that ha[s] been expunged, or an invalid conviction," *id.* § 4A1.1 cmt. n.1.

### 3. The Ordinary Meaning of "And" Does Not Produce an Absurd Result.

The government next relies on the absurdity doctrine. The doctrine permits a court to "depart from the literal meaning of an unambiguous statute . . . where a rational Congress could not conceivably have intended the literal meaning to apply." *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1350 (11th Cir. 2021) (Pryor, C.J., concurring) (alteration adopted) (citation and internal quotation marks omitted). Because "[c]ourts should not be in the business of rewriting legislation, . . . we apply the absurdity doctrine only under rare and exceptional circumstances." *Id.* (internal quotation marks omitted). The government argues that, because only "the rare defendant" would fail all three subsections in section 3553(f)(1), our interpretation "would expand eligibility to defendants that Congress could not have plausibly deemed worthy of relief." We disagree.

This case is not the exceptional one in which the absurdity doctrine permits us to rewrite the statute, as even our dissenting colleagues acknowledge. *See* Branch Dissenting at 23–24. Congress could rationally have "question[ed] the wisdom of mandatory minimum sentencing," which, "it is often said, fail[s] to account for the unique circumstances of offenders who warrant a lesser penalty." *See Harris v. United States*, 536 U.S. 545, 568 (2002), *overruled on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013). And Congress could rationally have decided to allow many defendants to be sentenced based on their "unique

circumstances," *see id.*, while retaining mandatory minimums for those defendants it perceived to be particularly unworthy of relief. To that end, each portion of section 3553(f)(1) targets a different type of behavior suggestive of future dangerousness. Under the guidelines, a prior sentence can have up to three points associated with it. *See* U.S.S.G. § 4A1.1. So the requirement in subsection (A)—that a defendant not have "more than 4 criminal history points"—targets serious recidivists, that is, defendants with more than one prior sentence excluding minor one-point offenses. *See* 18 U.S.C. § 3553(f)(1)(A). The requirement in subsection (B)—that a defendant not have a 3-point offense—targets defendants who have committed those serious crimes that received long sentences of imprisonment. *See id.* § 3553(f)(1)(B). And the requirement in subsection (C) targets defendants with a history of violence even though they received shorter sentences. *See id.* § 3553(f)(1)(C). Taken together, the conditions in section 3553(f)(1) are rationally aimed at ensuring that the most dangerous offenders—violent recidivists with a history of committing serious crimes—remain ineligible for safety-valve relief.

The rationality of section 3553(f)(1) is even clearer—and the absurdity argument even weaker—when the section is considered as part of the larger statutory scheme. A criminal defendant's ability to satisfy section 3553(f)(1) does not guarantee that the defendant will satisfy the four other subsections necessary to qualify for safety-valve relief. *See id.* § 3553(f)(2)–(5). To the contrary, those subsections will often disqualify defendants the

government considers unworthy of relief. For example, the government expresses concern that certain violent offenders may remain eligible for relief, but the statute disqualifies a defendant if he "use[s] violence or credible threats of violence . . . in connection with the offense," or if the offense "result[s] in death or serious bodily injury to any person." *Id.* § 3553(f )(2)–(3). Moreover, it does not follow from the availability of safety-valve relief that a defendant will always receive a sentence that is meaningfully different from the mandatory minimum. A defendant who is eligible for safety-valve relief must be sentenced "pursuant to [the sentencing] guidelines," *id.* § 3553(f ), and the guidelines treat a defendant's criminal history as an aggravating factor warranting a longer sentence, *see, e.g.*, U.S.S.G. §§ 4A1.1, 4B1.1, 4B1.3–4. As our dissenting colleague explains, a judge who has discretion to impose a shorter sentence, based on the safety-valve provision, may reasonably choose not to exercise that discretion if consideration of the defendant's history counsels against it. Brasher Dissenting at 3–4.

Because section 3553(f )(1) is rational, we have no power to rewrite the statute to accommodate the government's policy concerns about the number of defendants eligible for relief, *see Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021), and the government gets no further by ascribing those concerns to Congress. The First Step Act was enacted to decrease the number of criminal defendants subject to mandatory minimum sentences. *See* 18 U.S.C. § 3553(f )(1) (2012) (pre-First Step Act provision

disqualifying a defendant from safety-valve relief if he had "more than 1 criminal history point"). That Congress might not have anticipated how broadly its reforms would sweep does not make those reforms absurd. *See Vachon*, 20 F.4th at 1351 (Pryor, C.J., concurring) ("[T]he absurdity doctrine does not give us license to fix substantive errors arising from a drafter's failure to appreciate the effect of certain provisions . . . ." (internal quotation marks omitted)).

The government also mentions the possibility that a conjunctive reading of "and" would disqualify some defendants while "allow[ing] more serious offenders to obtain relief." And our concurring colleague offers a specific hypothetical example about an offender who has several violent three-point offenses but no violent two-point offenses. Rosenbaum Concurring at 3. Notably, one of our sister circuits, which shares our view of the conjunctive reading, has rejected our concurring colleague's reading. *See Lopez*, 998 F.3d at 440 n.10 (rejecting this interpretation as "nonsensical" because the section 3553(f)(1)(c) requirement for a two-point violent offense can be fulfilled by a three-point offense). But we need not—and do not—decide specific applications of the statute to offenders who are not before us.

Neither the government's interpretation nor our concurring colleague's specific example would make the ordinary meaning of the statute absurd. "Congress often legislates at the macro level, not on a micro scale." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1229 (11th Cir. 2001). One consequence of this approach

is that legislation sometimes "sweep[s] too broadly" by "affording protection and relief to some who are not truly deserving or aggrieved," even as it sweeps "too narrowly" by "failing to reach some who are more deserving or aggrieved." *Id.* Because this "[i]mperfection" stems from the "nature of [the] political process," *id.*, we consider the rationality of the overall statutory scheme and not whether "a particular application of the [scheme] may lead to an arguably anomalous result," *see Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 364 (11th Cir. 2012). And because, as we have explained, a rational Congress could conceivably have intended to disqualify only those defendants who satisfy every condition in section 3553(f)(1), the perceived inequities of particular applications do not rise to the level of an absurdity.

### 4. The Legislative History Is Irrelevant.

The government argues that the legislative history supports its interpretation, but we agree with its alternative argument that "[t]here is no need to consult [that] history." Assuming legislative history plays a role in modern statutory interpretation, *see Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (en banc), that role is limited to "shed[ding] . . . light on the enacting Legislature's understanding of otherwise ambiguous terms," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Because the meaning of "and" in section 3553(f)(1) is unambiguous, legislative history has no role to play here. And even if there were ambiguity, "the need for fair warning" for an accused,

*Crandon v. United States*, 494 U.S. 152, 160 (1990), "preclude[s] our resolution of the ambiguity against [Garcon] on the basis of . . . legislative history," *see Hughey v. United States*, 495 U.S. 411, 422 (1990).

   5. The Rule of Lenity Counsels Against the Government's
      Interpretation.

   If any "grievous ambiguity" remained, the rule of lenity would resolve it. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal quotation marks omitted). "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010) (Pryor, J., concurring). The rule applies "not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Id.* at 717 (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). Our dissenting colleagues dismiss the rule of lenity by maintaining that their interpretation resolves any ambiguity. Branch Dissenting at 27–28. But our dissenting colleagues resolve this ambiguity only by ignoring the canons that point in a different direction. *See* SCALIA & GARNER, *supra*, § 3, at 59 ("Principles of interpretation are guides to solving the puzzle of textual meaning, and as in any good mystery, different clues often point in different directions."). Even if our dissenting colleagues and the government were correct that our interpretation rendered part of section 3553(f)(1) superfluous, we would be faced with an ambiguous statute: ordinary meaning, the presumption of consistent usage,

and the Senate drafting manual would point toward one interpretation, and the presumption against superfluity would point toward another. In that circumstance, the rule of lenity would require us to give the word "and" "its ordinary, accepted meaning," see *Burrage v. United States*, 571 U.S. 204, 216 (2014), and treat the word as conjunctive.

## IV. CONCLUSION

We **AFFIRM** Garcon's sentence.

ROSENBAUM, Circuit Judge, Concurring:

From my seat, the shootout at the Eleventh Circuit Corral between the well-reasoned Majority and Dissenting Opinions here produces no indisputable winner after the smoke clears. For me, the problem is that the traditional tools of statutory interpretation fail to produce one interpretation of 18 U.S.C. § 3553(f)(1) that is "the best interpretation," *Shular v. United States*, 140 S. Ct. 779, 788 (2020), (Kavanaugh, J., concurring) (citation omitted). Rather, even after we exhaust all the ammunition in our statutory-interpretation belts, a "grievous ambiguity" remains as to whether a defendant still qualifies for safety-valve relief under 18 U.S.C. § 3353(f)(1) if he satisfies fewer than all three factors that that provision outlines. *See Muscarello v. United States*, 524 U.S. 125, 138–39 (1998).

So I would apply the rule of lenity to settle that "grievous ambiguity."[1] And as the Majority Opinion explains, applying that rule begets the conclusion that a defendant qualifies for safety-

---

[1] Still, I note that some say that application of the rule of lenity requires only that, after resort to all the traditional tools of interpretation, "a reasonable doubt persists" about the statute's intended meaning. *See United States v. McNab*, 331 F.3d 1228, 1239 n.21 (11th Cir. 2003) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 299 (2012) (favoring this formulation, even though it is "more defendant-friendly than most" formulations, for "when the government means to punish, its commands must be reasonable clear.").

19-14650          ROSENBAUM, J., Concurring          2

valve relief as long as he does not satisfy all three of the factors 18 U.S.C. § 3353(f)(1) identifies.

That said, the Dissent's common-sense interpretation of § 3553(f)(1), which reads the "and" as an "or," has a lot of appeal because it converges with what appears to be the statute's manifest intent. Under the original version of § 3553(f)(1), a defendant qualified for safety-valve relief only if he did "not have more than 1 criminal history point, as determined under the sentencing guidelines." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 80001(a), 108 Stat. 1796, 1985 (1994) (current version at 18 U.S.C. § 3353(f)(1)). As the name and content of that law indicate, and as then-President William Clinton explained before signing the law, Congress was particularly concerned when it enacted that statute about keeping "violent criminals off the street." *Remarks on Signing the Violent Crime Control and Law Enforcement Act of 1994*, 2 Pub. Papers. 1539, 1540 (Sept. 13, 1994). So the safety valve provided an escape from mandatory minimum sentences for only those with the most minimal criminal histories.

The First Step Act then loosened up safety-valve eligibility a bit, authorizing relief from a mandatory minimum sentence for a defendant who, among other qualifications, "does not have" "more than 4 criminal history points," "a prior 3-point offense," "and" "a prior 2-point violent offense." First Step Act of 2018, Pub. L. No. 115-391, § 402(a)(1), 132 Stat. 5194, 5221 (2018) (amending 18 U.S.C. § 3553(f)(1)). Though the Act expanded eligibility,

19-14650            ROSENBAUM, J., Concurring                3

Congress's decision to make "a prior 2-point violent offense" either partially or wholly disqualifying (depending on whether the Majority Opinion or the Dissent is right) evinces Congress's continued concern about authorizing safety-valve relief for anyone previously convicted of a truly violent crime. After all, a two-point offense is one for which a defendant was previously sentenced to imprisonment for a comparatively shorter sentence—for as few as two months. *See* U.S.S.G. § 4A1.1(b) (defining a two-point offense as one for which a sentence lasting between two and thirteen months was imposed).

So from a common-sense standpoint driven by the purpose and statutory context of § 3553(f)(1), the Majority Opinion's construction of that provision is entirely counterintuitive. To illustrate just how counterintuitive that construction is, imagine two hypothetical defendants. The first has ***seven violent three-point offenses*** (prior convictions for which a sentence of at least thirteen months was imposed, *see* U.S.S.G. §§ 4A1.1(a)), and has spent years in prison for those violent crimes. Although this first defendant's total criminal history tallies twenty-one points—all incurred for committing violent crimes—he has no prior two-point violent convictions. And for that reason, he qualifies for the safety valve under the Majority Opinion's interpretation of § 3553(f)(1). The second defendant, meanwhile, has just a single two-point violent conviction (which landed him in jail for only two months) and one three-point ***nonviolent*** conviction for a total of five points. Yet because that second defendant satisfies all three § 3353(f)(1)

19-14650            ROSENBAUM, J., Concurring                    4

factors, he does not qualify for safety-valve relief under the Majority Opinion's interpretation of that provision. If the second defendant's single two-point violent offense is enough to knock him out of contention for the safety valve, it is hard to see why Congress, in trying to restrict safety-valve access to nonviolent offenders, would have intended for the first defendant, with years in jail on 21 points' worth of violent offenses, to qualify for it.

Dismissing this contradiction, the Majority Opinion suggests that § 3553(f)(1)'s "requirement for a two-point violent offense can be fulfilled by a three-point offense." *See* Maj. Op. at 21 (citing *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021)).

But an analysis that lives by the text must also die by it. And the Majority Opinion's suggestion that we can read § 3553(f)(1)'s reference to a "2-point violent offense, as determined under the sentencing guidelines" to mean a "2-point *or more* violent offense, as determined under the sentencing guidelines" would require us to add text that doesn't exist. Indeed, the definition of "2-point offense" under the sentencing guidelines is mutually exclusive of the definition of "3-point offense."[2] And as the Majority Opinion

---

[2] Under the Sentencing Guidelines, a "2-point offense" is an offense for which the defendant was sentenced to "imprisonment of at least sixty days not counted in [U.S.S.G. § 4A1.1](a)." Subsection 4A1.1(a), in turn, provides that a prior conviction scores three points if the defendant was sentenced to "imprisonment exceeding one year and one month." U.S.S.G. s 4A1.1(a). So a "2-point offense" is necessarily one where the defendant was sentenced to between 60 days and one year and one day shy of one month in prison, while a "3-point offense" is one where the defendant was sentenced to at least one

19-14650          Rosenbaum, J., Concurring                    5

correctly notes, when we engage in a textual analysis, we can't just add words that Congress did not write. *See* Maj. Op. at 12 (citing *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999)). Even the Majority Opinion appears to recognize the weakness in its suggestion, since it expressly declines to adopt the reading it suggests. *See* Maj. Op. at 21 (excusing its decision not to adopt this reading of the text because "[w]e need not—and do not—decide specific applications of the statute to offenders who are not before us").

To summarize, then, the upshot of the Majority Opinion's construction of § 3553(f)(1) is this:  the first defendant, who served years in prison for violent crimes, qualifies for safety-valve relief, while the second defendant, who served only two months in prison for one violent crime, does not.  Why?  According to the Majority Opinion, the answer is that the first defendant never committed a two-point violent offense while the second defendant did.  Yet the first defendant served years in prison for his violent offenses, while the second defendant served only two months in prison for a single violent offense.  That just seems wrong—especially because we know Congress was concerned about the problem of repeat violent offenders when it enacted and amended § 3553(f)(1).

Besides the dissonance of that result, I am also unpersuaded by the Majority Opinion's explanation for why its reading of §

year and one month in prison.  And a "3-point offense," by definition, cannot qualify as a "2-point offense" under the Sentencing Guidelines.

19-14650                ROSENBAUM, J., Concurring                6

3553(f)(1) does not render the four-point criminal-history disqualification criterion surplusage. *See* Maj. Op. at 14–17 (reasoning that a defendant with prior two-point and three-point offenses does not qualify for safety-valve relief when those convictions occurred more than ten or fifteen years ago, at which point the Sentencing Guidelines instruct courts to exclude those offenses from the defendant's total criminal-history score). It seems odd to require courts to include points from prior convictions in assessing a defendant's eligibility for safety-valve relief when the Sentencing Guidelines expressly instruct us to exclude those same points in determining the Sentencing Guidelines range—a fact that Congress knew, as Congress must at least implicitly approve the Sentencing Guidelines. *See* 28 U.S.C. § 994(p).

Still, though, the Supreme Court has cautioned us that "[t]he canon against surplusage is not an absolute rule." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). And though I personally don't find the Majority Opinion's surplusage explanation satisfying, I also can't say it's wrong beyond question.

Plus, the Majority Opinion is, of course, correct when it emphasizes that "and" is a conjunctive word. Not only does the statute use the word "and" to connect all three disqualifying factors under § 3553(f)(1), but it also uses "and" as a conjunctive word elsewhere in § 3553(f). And that further suggests that "and" means "and" in § 3553(f)(1). There is also no doubt that Congress employed the disjunctive "or" elsewhere in § 3553(f), which

19-14650          ROSENBAUM, J., Concurring          7

similarly suggests that Congress would have used "or" in § 3553(f)(1) if that's what it intended.

Each of these dueling interpretive canons and considerations seems to apply more strongly than the last in the context of analyzing § 3553(f)(1). At the end of the day, I am concerned that our decision today is based on "no more than a guess as to what Congress intended." *Ocasio v. United States*, 578 U.S. 282, 296 n.8 (2016) (quoting *Muscarello*, 524 U.S. at 138–39) (explaining the circumstances that trigger application of the rule of lenity). In my view, § 3553(f)(1) is just "grievously ambiguous."

With that in mind, I also have two concerns with following the Dissent's construction. First, given the plain language of § 3553(f)(1), I don't think the statute clearly notifies defendants that satisfying only one or two of the three factors under § 3553(f)(1) will disqualify them from eligibility for safety-valve relief. And second, I don't think we can rule out the possibility that Congress intended to use "and," even though that seems unlikely to me. For these reasons, I am concerned that the Dissent's construction, which replaces "and" with "or," is unfaithful to the statutory language and therefore violates the separation of powers.

Not for nothing, but those are precisely the two concerns the rule of lenity addresses. *See United States v. Phifer*, 909 F.3d 372, 383 (11th Cir. 2018) (citing *United States v. Bass*, 404 U.S. 336, 347 (1971)). As the Supreme Court has observed, the rule of lenity is just about as old as "the task of statutory 'construction itself.'" *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019) (quoting *United*

*States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.)).  Indeed, the rule of lenity reflects the law's "tenderness" for "the rights of individuals" to receive "fair notice of the law" and "on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.'" *Id.*

Though the cases where the rule of lenity applies are few and far between—after all, it is a rule of last resort that applies only after exhausting the canons of statutory construction still leaves us with a "grievously ambiguous" statute—§ 3553(f)(1) is one of the rare statutes that require the rule's application.  And when we apply the rule of lenity here, we must conclude that a defendant is ineligible for safety-valve relief under § 3553(f)(1) only if his criminal history satisfies all three of the requirements the statute sets forth as disqualifying.  For that reason, I concur in the judgment of the Majority Opinion.

NEWSOM, Circuit Judge, joined by LAGOA, Circuit Judge, concurring:

I concur in the Court's decision and join its opinion in full.  I write separately simply to articulate one more reason for rejecting the government's anti-surplusage argument—and to comment, very briefly, on what I take to be the proper role of canons of construction in the interpretive enterprise.

A lot of ink has been spilled over the anti-surplusage canon's relevance to the question before us.  Today's majority and the Ninth Circuit have identified two different ways to eliminate the purported surplusage in § 3553(f)(1).  *See* Maj. Op. at 14–17; *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021).  Today's dissent, adopting the government's position and joining the Fifth, Seventh, and Eighth Circuits, disagrees.  *See* Dissenting Op. at 12–22; *United States v. Palomares*, 52 F.4th 640, 640–45 (5th Cir. 2022); *United States v. Pace*, 48 F.4th 741, 754–55 (7th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018, 1021–22 (8th Cir. 2022).  Here's the thing, though:  Even if the government and today's dissenters had the stronger position in the surplusage battle, they wouldn't win the interpretive war.  The reason:  The anti-surplusage canon gives us no license to skirt unambiguous text, and no canon can make the word "and" in § 3553(f)(1) mean "or."

"In interpreting written law, our duty is to 'determine the ordinary public meaning' of the provision at issue."  *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) (quoting *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020)).  To be sure, "[t]he

19-14650                NEWSOM, J., Concurring                    2

canons of construction often 'play a prominent role' in that endeavor, serving as 'useful tools' to discern that ordinary meaning." *Id.* (quoting *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) (Alito, J., concurring)). I consult the canons routinely in statutory, regulatory, and contract cases—we all do. But the canons "are not 'rules' of interpretation in any strict sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 51 (2012). Rather, they are simply "presumptions about what an intelligently produced text conveys." *Id.* Accordingly, in carrying out our basic task—discerning a written provision's ordinary meaning—"we shouldn't treat the canons 'like rigid rules,'" and we should be alert to over- or misusing them. *Heyman*, 31 F.4th at 1319 (quoting *Duguid*, 141 S. Ct. at 1175 (Alito, J., concurring)). For it bears repeating that our "obligation is to the text and not the canons *per se*." *Id.* at 1321–22; *see also United States v. Monsanto*, 491 U.S. 600, 611 (1989) ("[I]nterpretative canons are not a license for the judiciary to rewrite language enacted by the legislature." (cleaned up)).

The government's anti-surplusage argument here—which, I'll admit, is not without some force—violates this cardinal command. It would have us mechanically apply the anti-surplusage canon at the expense of § 3553(f)(1)'s plain text. But doing so exacts too great a cost. After all, "the usual 'preference' for 'avoiding surplusage constructions is not absolute,'" and "'applying the rule against surplusage is, absent other indications, inappropriate' when it would make an otherwise unambiguous

19-14650                NEWSOM, J., Concurring                3

statute ambiguous." *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1301
(11th Cir. 2018) (quoting *Lamie v. United States Tr.*, 540 U.S. 526,
536 (2004)).  Thus, when we are "faced with a choice between a
plain-text reading that renders a word or clause superfluous and an
interpretation that gives every word independent meaning but, in
the doing, muddies up the statute," we "'should prefer the plain
meaning.'" *Id.* (quoting *Lamie*, 540 U.S. at 536).  Only "that
approach respects the words of Congress" and our limited judicial
role.  *Lamie*, 540 U.S. at 536.

Put simply, just as no amount of canon-based massaging
could make "white" mean "black" or "up" mean "down," none can
make the word "and" mean "or."  Now, maybe Congress just made
a mistake—perhaps it meant to say "or" in § 3553(f)(1) instead of
"and."  But "[i]t is beyond our province to rescue Congress from its
drafting errors, and to provide for what we might think . . . is the
preferred result."  *Id.* at 542 (quotation omitted).  If Congress
goofed, it should exercise its Article I authority to amend the
statute; Article III doesn't empower us to do Congress's job for it.
Were we to engage in interpretive gymnastics to make § 3553(f)(1)
say what it objectively, demonstrably, verifiably does not say—in
essence, to save Congress from itself—we would do the separation
of powers, and democracy itself, a profound disservice.

JORDAN, J., Dissenting:

The criminal history criteria of the so-called "safety-valve" provision allows a district court in certain narcotics cases to impose a sentence without regard to an otherwise-applicable statutory minimum if "the defendant does not have"

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>
> (B) a prior 3-point offense, as determined under the sentencing guidelines; *and*
>
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines[.]

18 U.S.C. § 3553(f)(1) (emphasis added). According to the majority's reading of § 3553(f)(1)(A)-(C), the "and" linking subsections (f)(1)(A), (f)(1)(B), and (f)(1)(C) is conjunctive. A defendant who has seven 3-point felony offenses (but no 2-point violent offenses) is therefore eligible for "safety-valve" relief. So is a defendant who has five violent 2-point offenses (but no 3-point offenses).

I very much doubt that this is the state of affairs that Congress envisioned when it revised the criminal history portion of the "safety valve" provision in the First Step Act of 2018. I agree with much of what Judge Branch has said, and join Parts I, II, III.A, and III.B of her dissent. I write separately to explain that—depending on the context—the word "and" can be read

19-14650          JORDAN, J., Dissenting                    2

disjunctively in legal texts, and to set out the views of the Senators who proposed the exact provision that became § 3553(f)(1).

I

At the end of the day, the resolution of Mr. Garcon's case turns on the meaning of the word "and" in § 3553(f)(1)(A)-(C). I therefore begin with how that word is understood.

Generally "and" is used as a conjunctive connector of words, phrases, or clauses. *See Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005); The American Heritage Dictionary of the English Language 66 (5th ed. 2018). But here "and" is being used in a statute, so its legal sense matters. *See, e.g., Stansell v. Revolutionary Armed Forces of Colombia*, 45 F. 4th 1340, 1353-54 (11th Cir. 2022) (choosing the legal understanding, rather than the lay understanding, of a statutory term). And that is where things start to get interesting.

By the mid-19th century, English courts had "already allowed for *and = or* and *or = and*." Webster's Dictionary of English Usage 94 (1989). The legal interchangeability between "and" and "or" was similarly understood across the pond in American law. The Supreme Court expressly recognized this fluidity in *United States v. Fisk*, 70 U.S. 445, 447 (1865), and legal dictionaries of the era did as well. *See* 1 Alexander M. Burill, A New Law Dictionary and Glossary: Containing Full Definitions of the Principal Terms of the Common and Civil Law 70 (1850) ("AND, in written instruments, is frequently construed to mean *or*,

19-14650                JORDAN, J., Dissenting                3

where reason and the intent of the parties requires it. . . . A similar rule of construing the conjunctive participle in a disjunctive sense, prevailed in the civil law. *Sæpa ita comparatum est, ut conjuncta pro disjunctis accipiantur.*"); 1 Stewart Rapalje & Robert L. Lawrence, A Dictionary of American and English Law, with Definitions of the Technical Terms of the Canon and Civil Laws 58 (1888) (recognizing that "and" can be "construed to mean 'or'" or "read [as] 'or'"); Arthur English, Dictionary of Words and Phrases Used in Ancient and Modern Law 47 (1899) ("And. . . . Sometimes construed to mean 'or.'"); James John Lewis, Collegiate Law Dictionary: A Dictionary of Technical Terms of the Law and of Words and Phrases Which Have Been Judicially Defined 13 (1925) ("[A]nd . . . In construing instruments and statutes, frequently construed as meaning 'or[.]'"); William E. Baldwin, Baldwin's Century Edition of Bouvier's Law Dictionary 71 (1926) ("AND. In order for the court to ascertain the intention of the legislature in construction of statutes, they are often compelled to construe 'or' as meaning 'and,' and again 'and' as 'or.'").[1]

---

[1] For other early 20th-century sources repeating the same theme, see 1 Judicial and Statutory Definitions of Words and Phrases 386-394 (West. Pub. Co. 1904) ("[the] strict meaning [of 'and' and 'or'] is more readily departed from than that of any other words, and one read in the place of the other in deference to the meaning of the context," so that "['and'] must be regarded as a convertible term with 'or,' if the sense so requires, even in a criminal statute, where a strict construction usually prevails"); 3 William M. McKinney & David S. Garland, American & English Encyclopedia of Law and Practice 932 (1910) (essentially the same).

19-14650                           JORDAN, J., Dissenting                           4

We've said the same things several times. For example, in *Peacock v. Lubbock Compress Co.*, 252 F. 2d 892, 893 (5th Cir. 1958), we explained that "the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings." More recently, we noted that

> "*[e]very* use of 'and' or 'or' as a conjunction involves *some* risk of ambiguity." As we have recognized in our cases, "[i]t is an established princip[le] that 'the word "or" is frequently construed to "and," and *vice versa*, in order to carry out the evident intent of the parties.'" In other words, "there is more to 'and' than meets the eye."

*Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 605 F.3d 1250, 1253 (11th Cir. 2010) (citations omitted).

In sum, "[t]he simplest-looking words are often among the most complicated, and 'and' is no exception." R.W. Burchfield, Fowler's Modern English Usage 52 (Rev. 3d ed. 2004). As one legal dictionary has put it: "'And' is a conjunction that has an inherent ambiguity in its use . . . . [As an example,] 'the clerk requires A, B, and C,' may mean that the clerk requires one of the three or that the clerk requires all three at once." 1 Bouvier Law Dictionary 148 (Desk ed. 2012). *Accord De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956) ("We start with the proposition that the word 'or' is often used as a careless substitute for the word 'and'; that is, it is often used in phrases where 'and' would express the thought with greater clarity."); Bryan A. Garner, Garner's Dictionary of Legal Usage 56 (3d ed. 2011) ("Sloppy drafting sometimes leads courts to

19-14650                JORDAN, J., Dissenting                5

recognize that *and* in a given context means *or*, much to the chagrin of some judges[.]").[2]

## II

The original "safety valve" provision, enacted by Congress in 1994, allowed district courts to sentence certain narcotics defendants without regard to an otherwise-applicable statutory minimum if certain criteria were established.  One of those criteria was that the defendant did "not have more than 1 criminal history point, as determined under the sentencing guidelines."  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-33, Title VIII, § 80001, 108 Stat. 1796 (Sept. 13, 1994).  "The intent, clear from the face of the [provision], [wa]s to provide a 'safety valve' so that less culpable offenders [we]re not subject to mandatory minimums."  *United States v. McFarlane*, 81 F.3d 1013, 1014 (11th Cir. 1996).  For almost a quarter of a century, the criminal history criteria of the "safety valve" provision remained unchanged.

## A

In November of 2018, Senator Chuck Grassley—together with 11 fellow Senators serving as original co-sponsors—introduced a bill in the Senate that would, as relevant here, change the criminal history criteria for "safety valve" relief.  That bill, as drafted, did not become law.  But its proposed language for the revised version of 18 U.S.C. § 3553(f)(1) remained unchanged when

---

[2] There are no entries for "and" in the 2019 edition of Black's Law Dictionary or in the 2016 edition of Merriam-Webster's Dictionary of Law.

19-14650                 JORDAN, J., Dissenting                 6

the First Step Act was passed a month later—subsections (f)(1)(A), (f)(1)(B), and (f)(1)(C) were connected by the word "and." *See* The First Step Act, S. 3649, § 402(B) ("Broadening of Existing Safety Valve"), 115th Cong., 2d Sess. (Nov. 15, 2018).[3]

The Senate Committee on the Judiciary—through Senator Grassley and his co-sponsors—published a summary of what S. 3649 was meant to do.  With respect to the proposed amendment of the criminal history criteria of the "safety valve" provision, they explained that the broadened version would still limit relief to defendants with little or no criminal history:

> This section expands the existing safety valve to include offenders with up to four criminal history points, excluding 1-point offenses, such as minor misdemeanors.  However, offenders with prior "3 point" felony convictions (sentences exceeding one year and one month) *or* prior "2 point" violent offenses (violent offenses with sentences of at least 60 days) will not be eligible for the safety valve absent a judicial finding that those prior offenses substantially overstate the defendant's criminal history and danger of recidivism.

---

[3] So that the reader can compare it with § 3553(f)(1), a copy of § 402 of S. 3649 is attached as an appendix.

19-14650                  JORDAN, J., Dissenting                  7

Senate Committee on the Judiciary, "The First Step Act of 2018 (S. 3649)—as introduced," p. 2 (Nov. 15, 2018) (emphasis added).[4]

So, according to the Senators who proposed the language that ultimately became § 3553(f)(1) with no changes, a defendant who had more than 4 criminal history points, *or* a 3-point offense, *or* a 2-point violent offense would not be eligible for "safety valve" treatment.  In other words, the "and" in the new subsections (f)(1)(A)-(C)—the word we are debating in this case—was meant to be disjunctive, and not conjunctive.[5]

"Legislative history is not the law, but [it] can help us understand what the law means."  Robert A. Katzmann, Judging Statutes 38 (2014).  When a statutory term is unclear, certain types of legislative materials—if probative of intent or purpose—can help courts figure out the better (or more appropriate) reading of the term.  "Traditionally," then, "the Supreme Court and other federal courts have routinely considered statements by sponsors when relevant to an issue of statutory interpretation."  William N. Eskridge, Jr., Interpreting Law: A Primer on How to Read Statutes and the Constitution 246 (2016).[6]

---

[4] A copy of the summary prepared by the Senate Committee on the Judiciary is also attached as an appendix.

[5] It is also telling that the Senators who introduced S. 3649 used the words "conviction," "offense," and "sentence" interchangeably.

[6] Although the Supreme Court may have recently turned away from legislative materials in a number of cases, that course is "remarkable in light of the close analogy to constitutional materials, where the . . . Court cites and

19-14650                 JORDAN, J., Dissenting                         8

I do not suggest that the collective view of Senator Grassley and his Senate co-sponsors is determinative as to the meaning of "and." But I do submit that it is relevant. *See, e.g., Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777-78 (2018) (considering legislative materials concerning a statute's purpose in determining the meaning of a statutory term); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958 (11th Cir. 2007) (considering a sponsor's statement about the purpose of a proposed statutory amendment).

After all, "[i]f a statute is to make sense, it must be read in the light of some assumed purpose. A statute merely declaring a rule, with no purpose or objective, is nonsense." Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 400 (1950). Our job is to "ascertain the . . . intention of [Congress]," and in "order to do this" we are sometimes "compelled to construe '*or*' as meaning '*and*,' and again '*and*' as meaning '*or*.'" *Fisk*, 70 U.S. at 447.

## B

"[C]ommon sense is not irrelevant in construing statutes." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1312 (11th Cir.

---

debates *The Federalist Papers* as though they were barnacles attached to the Constitution." Eskridge, Interpreting Law, at 247. And if the majority is able to rely on sources like the Senate's legislative drafting manual, I don't see why the collective view of those who drafted and proposed what became § 3553(f)(1) is taboo.

19-14650                JORDAN, J., Dissenting                9

2013).  Here a disjunctive reading of "and" in § 3553(f)(1) makes a lot of sense.

As Judge Branch convincingly explains, if the word "and" is read conjunctively—so that a defendant is disqualified from "safety valve" relief only if he has more than 4 criminal history points (subsection (f)(1)(A)), *and* a 3-point offense  (subsection (f)(1)(B)), *and*  a 2-point violent offense (subsection (f)(1)(C))—then subsection (f)(1)(A) is rendered superfluous.  Why?  Because a defendant who has both a 3-point offense and a violent 2-point offense—two of the three required criteria according to the majority—necessarily has more than 4 criminal history points.  No matter what math one uses, 3 + 2 = 5, and subsection (f)(1)(A) becomes meaningless.[7]

We "are obliged to give effect, if possible, to every word Congress used," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), and reading "and" disjunctively seems like a small linguistic price to pay to avoid making subsection (f)(1)(A) superfluous.  *See* 1A Norman Singer, Sutherland on Statutory Construction § 21:14 (7th ed. & Nov. 2020 update).  Given the choices available, it is better to read a word in its non-usual (but legally permissible) sense than to render a statutory provision meaningless.  As we have done

---

[7] Things would be markedly different if, for example, subsection (f)(1)(A) said "more than 6 criminal history points" because then a defendant with a single 3-point offense and a single 2-point violent offense would not have 6 criminal history points.  In that example, subsection (f)(1)(A) would still have independent effect.

19-14650                    JORDAN, J., Dissenting                    10

before, I would resolve the case on that basis.  *See Peacock* , 252 F.2d at 893 (construing the word "and" as "or" in order to prevent a provision from being "read . . . out of the statute").

### III

As I read § 3553(f)(1)(A)-(C), Mr. Garcon was ineligible for "safety valve" relief because he had a prior 3-point offense.  With respect, I dissent from the majority's contrary conclusion.

BRANCH, Circuit Judge, dissenting, in which GRANT and BRASHER, Circuit Judges, join, and JORDAN, Circuit Judge, joins as to Part I, II, III.A, and III.B:

The safety-valve provision of the First Step Act permits a sentencing court to disregard an otherwise applicable statutory minimum sentence for qualifying defendants. *See* 18 U.S.C. § 3553(f). Subsection (f)(1), one of five enumerated subsections that a defendant must meet to qualify for safety-valve relief, provides that a court must find that a "defendant does not have":

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>
> (B) a prior 3-point offense, as determined under the sentencing guidelines; *and*
>
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

18 U.S.C. § 3553(f)(1) (emphasis added). The question we must answer in this appeal is how to interpret the "and" in subsection (f)(1)—a question that, as it turns out, is the subject of much debate in several of our sister circuits.[1]

---

[1] The Fifth, Seventh, Eighth, and Ninth Circuits have addressed this issue. *See, e.g.*, *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022); *United States v. Pace*, 48 F.4th 741(7th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018 (8th Cir. 2022), *petition for cert. filed*, (U.S. Oct. 12, 2022) (No. 22-340); *United*

19-14650               BRANCH, J., Dissenting                    2

A circuit split now exists on this issue. On the one hand, the Ninth Circuit has held that the "and" in § 3553(f)(1) is conjunctive such that a defendant must possess all three criminal history criteria to be disqualified. *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021). On the other hand, the Fifth, Eighth, and Seventh Circuits have held that a defendant who possesses any one of the specified criminal history criteria is disqualified, albeit by reaching this conclusion in different ways. The Fifth Circuit and Eighth Circuit held that the "and" bears a conjunctive but distributive meaning; the Seventh Circuit held that the "and" is disjunctive. *See United States v. Palomares*, 52 F.4th 640, 643–45 (5th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022); *United States v. Pace*, 48 F.4th 741, 754–55 (7th Cir. 2022). Thus, the interpretive question of first impression presented in our circuit is not as simple as the Majority makes it out to be, and the Majority's decision today—which sides with the Ninth Circuit—only deepens the circuit split.

I dissent because the Majority's interpretation is contrary to the structure and context of the statute. And it creates two surplusage problems. First, it renders an entire subsection—

---

*States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), *petition for reh'g en banc pending*. Similar appeals remain pending in the Fourth, Sixth, and Tenth Circuits. *See, e.g.*, *United States v. Jones*, case no. 21-4605 (4th Cir.) (oral argument pending); *United States v. Haynes*, case no. 22-5132 (6th Cir.) (oral argument held Oct. 20, 2022); *United States v. Kolkman*, case no. 22-8004 (10th Cir.) (oral argument held Nov. 17, 2022).

19-14650                BRANCH, J., Dissenting                3

(f)(1)(A)—redundant.    Second, it disregards Congress's plain instruction that all pertinent statutory determinations for purposes of § 3553(f)(1) are to be made "as determined under the sentencing guidelines."  Once context and structural cues are considered, the best reading of § 3553(f)(1) is that it bars safety-valve relief for defendants who have any one of the enumerated criminal history characteristics in (A)–(C).  Accordingly, I would hold that Garcon is ineligible for safety-valve relief because he has a disqualifying 3-point offense under § 3553(f)(1)(B).

## I.    Background

The facts surrounding Garcon's underlying conviction are not relevant to this appeal.  Suffice it to say, Garcon pleaded guilty to a drug offense which carried a statutory minimum sentence.  In an attempt to avoid the statutory minimum, Garcon sought refuge in the safety-valve provision of § 3553(f), as amended by the First Step Act of 2018, which instructs district courts to impose a sentence pursuant to the Sentencing Guidelines without regard to any applicable statutory minimum sentence if the court finds that the defendant meets certain requirements.

As amended by the First Step Act of 2018, the safety-valve provision provides:

> Notwithstanding any other provision of law, in the case of an offense under [various drug-related statutes], the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any

19-14650                BRANCH, J., Dissenting                4

statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) the defendant does not have—

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

> (B) a prior 3-point offense, as determined under the sentencing guidelines; and

> (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

19-14650              BRANCH, J., Dissenting                    5

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
>
> Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553(f) (2018).[2]  The first safety-valve requirement, § 3553(f)(1), is the one at issue.

In the district court proceedings below, Garcon argued that the "and" in subsection (f)(1)(B) was conjunctive, meaning that a defendant is eligible for safety-valve relief so long as he does not have all three specified criminal history characteristics in § 3553(f)(1)(A)–(C).  The government, on the other hand, argued that if a defendant has any one of the three criminal history

---

[2] Prior to the First Step Act amendment, § 3553(f)(1) disqualified any defendant from safety-valve relief who had "more than 1 criminal history point, as determined under the sentencing guidelines."  *See* 18 U.S.C. § 3553(f)(1) (2016).

characteristics in § 3553(f)(1)(A)–(C), then he is ineligible for safety-valve relief. The district court determined that § 3553(f)(1) was unambiguous, and "[t]he plain meaning of the statute require[d] all three subsections . . . to be met before the defendant becomes ineligible for safety valve [relief]." The district court noted that its reading "create[d] an absurd result," but that it was bound to apply the plain language of the statute.

The government appealed, arguing that, when examined in the broader context of the statute as whole, the only reasonable interpretation was that the "and" in § 3553(f)(1) operated disjunctively. A unanimous panel of this Court held that the plain text of the statute was clear because context and the canon against surplusage dictated that the "and" in § 3553(f)(1) did not bear its ordinary conjunctive meaning. *United States v. Garcon*, 997 F.3d 1301, 1304–06 (11th Cir. 2021), *vacated*, 23 F.4th 1334 (11th Cir. 2022). Rather, textual and structural indicators revealed that the "and" is disjunctive. *Id.* at 1305–06. Garcon petitioned for rehearing *en banc*. This Court voted to grant rehearing *en banc*, vacated the panel opinion, and directed the parties to brief one question: "Did the district court err in concluding that defendant Julian Garcon met the safety-valve-eligibility requirement set forth at 18 U.S.C. § 3553(f)(1)." *United States v. Garcon*, 23 F.4th 1334 (11th Cir. 2022).

Before the *en banc* court, the government argued that the "and" is conjunctive but distributive and that the preceding "does not have" qualifier in § 3553(f)(1) independently applied to each of

the disqualifying criminal history characteristics listed in (A)–(C). Alternatively, the government maintained that the prior panel correctly determined that the "and" in § 3553(f)(1) is disjunctive. Under either scenario, the result is the same—if a defendant possesses any one of the specified criminal history characteristics, then he is ineligible for safety-valve relief.

The Majority now holds that the "and" in § 3553(f)(1) is conjunctive, reasoning that the conjunctive meaning is compelled by the plain text of the statute under the ordinary meaning canon of statutory construction and the canon of consistent usage. Under the Majority's holding, defendants like Garcon, who possess one or two of the disqualifying criminal history characteristics in § 3553(f)(1) are eligible for safety-valve relief—*i.e.*, to be sentenced below an otherwise applicable statutory minimum—as long as the defendant does not have all three criminal history characteristics. In other words, the Majority's interpretation requires that in all cases a district court impose a sentence consistent with the Sentencing Guidelines, without regard to any statutory minimum sentence, if the district court finds that "the defendant does not have" "as determined under the sentencing guidelines" more than 4 criminal history points, excluding 1-point offenses, AND a prior 3-point offense, AND a prior 2-point violent offense.

But giving "and" in § 3553(f)(1) a conjunctive meaning as the Majority does violates the text of the statute and renders an entire subsection superfluous. Accordingly, I would hold that, considering the context and structure of the statute, the best

19-14650                BRANCH, J., Dissenting                        8

reading of § 3553(f)(1) is that a defendant is ineligible for safety-valve relief if he has any one of the three disqualifying criminal history characteristics set forth in § 3353(f)(1)'s safety-valve eligibility checklist.  Thus, Garcon would be ineligible for safety-valve relief because he has a disqualifying 3-point offense under § 3553(f)(1)(B).  Consequently, I respectfully dissent because the Majority's interpretation is contrary to the text of the statute when considered in context and violates the canon against surplusage.

My dissent proceeds in four parts.  First, I start where all issues of statutory interpretation must—with the text of the statute, guided by the interpretive canons of statutory construction.  Second, I explain how the Majority's conjunctive interpretation renders a portion of the statute superfluous.  Third, I explain other problems presented by the Majority's interpretation.  Lastly, I explain why the rule of lenity does not apply.

## II.    Standard of Review

Issues of statutory interpretation are reviewed *de novo. United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012).  In conducting statutory interpretation, "we do not look at one word or term in isolation but rather look to the entire statute and its context." *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir.

19-14650                BRANCH, J., Dissenting                    9

2010); *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (same).

## III.    Discussion

### A. Context demonstrates that the "and" in subsection (1) of the safety-valve statute is disjunctive

In determining the meaning of the safety-valve requirement in § 3553(f)(1), our "starting point . . . is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *see also United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself.").

In this case, we must interpret how the word "and" operates in the eligibility checklist in 18 U.S.C. § 3553(f)(1). "[O]ur authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." *Edison*, 604 F.3d at 1310.

Pursuant to the ordinary-meaning canon—the "most fundamental semantic rule of interpretation"—words are presumed to bear "their ordinary, everyday meanings." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). The Majority is certainly correct that "and" is ordinarily defined as "along with or together with"—carrying with it a conjunctive meaning. *See And*, *Webster's Third New Int'l*

*Dictionary* (2005).  Thus, the word "and" is presumed to bear its ordinary conjunctive meaning.   *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005).   But the conjunctive presumption given the term "and" by the ordinary-meaning canon is rebuttable.  Although words are presumed to bear their ordinary meaning, context can dictate otherwise.  Scalia & Garner, *supra*, at 70; *see also Am. Bankers Ins.*, 408 F.3d at 1332 (explaining that "the word 'and' is presumed to be used in its ordinary sense, that is, conjunctively," "unless the context dictates otherwise").  Accordingly, rather than viewing the term "and" in isolation, we must "look to the entire statutory context," *DBB, Inc.*, 180 F.3d at 1281, and we must "give effect, if possible, to every word Congress used," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).  Indeed, statutory interpretation "is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371 (1988).  Once context and structural cues are considered, the best reading of the "and" in § 3553(f)(1) is that it operates disjunctively.

It is well established that "there is more to 'and' than meets the eye." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1253 (11th Cir. 2010) (quoting *OfficeMax, Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2005)).  For "the word 'and' is not a word with a single meaning"; like a "chameleon[], it takes its color from its surroundings." *Peacock v. Lubbock Compress Co.*,

19-14650            BRANCH, J., Dissenting            11

252 F.2d 892, 893 (5th Cir. 1958).[3]  As a result, "[c]ourts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'"[4]  *Id.* (quoting *United States v. Fisk*, 70 U.S. 445, 447

---

[3] Decisions issued by the former Fifth Circuit before October 1, 1981, are binding precedent in our Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[4] Judge Newsom's concurrence implies that I am breaking new ground by construing "and" to mean "or."  Newsom, J., Concurring Op. at 3 ("Put simply, just as no amount of canon-based massaging could make 'white' mean 'black' or 'up' mean 'down,' none can make the word 'and' mean 'or.'").  Not so.  Rather, as we noted in *Peacock*—like it or not—courts often face imperfect drafting and, as a result, "are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'"  *Peacock*, 252 F.2d at 893 (quoting *United States v. Fisk*, 70 U.S. 445, 447 (1865)); *see, e.g., Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ("[J]ust because the ordinary meaning of 'and' is typically conjunctive does not mean 'and' cannot take on other meaning in context.  Indeed, 'and' can also mean 'or' in some circumstances." (internal citation omitted)); *OfficeMax, Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2005) (explaining that in the tax code, "Congress used 'and' in more than one sense . . . giving it a conjunctive meaning (requiring all items) in some places and giving it a disjunctive or cumulative meaning (allowing any of the items) in other places"); *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003) (holding that "or" in 21 U.S.C. § 802(32) is conjunctive); *United States v. Gomez-Hernandez*, 300 F.3d 974, 978–79 (8th Cir. 2002) (holding that the "and" in the "crime of violence" definition in U.S.S.G. § 2L1.2(b)(1)(A) is disjunctive), *abrogated on other grounds by*, *Descamps v. United States*, 570 U.S. 254 (2013); *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 714–17 (5th Cir. 1988) (holding that the term "and" in 12 U.S.C. § 1464(q)(1) is disjunctive); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 55 (2d ed. 1995) ("Oddly, *and* is frequently misused for *or* where a singular noun, or one of two nouns, is called for. . . .  Sloppy drafting sometimes leads courts to recognize that *and* in a given context means *or*, much to the chagrin of some judges.").

19-14650                BRANCH, J., Dissenting                12

(1865)); *see also e.g.*, *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (examining whether the word "or" in a statute was disjunctive or conjunctive); *Noell v. Am. Design, Inc.*, 764 F.2d 827, 833 (11th Cir. 1985) ("It is an established principle that the word 'or' is frequently construed to mean 'and,' and *vice versa*, in order to carry out the evident intent of the parties." (quotation omitted)). Thus, "every use of 'and' or 'or' as a conjunction involves some risk of ambiguity." *Shaw*, 605 F.3d at 1253 (quotation omitted). Accordingly, although the word "and" carries a presumption that it bears a conjunctive meaning, that presumption can be overcome by context.

When interpreting a statute—and certainly where, as here, there is more than one reasonable interpretation of a statutory term—we can look to the canons of statutory construction as a guide. "The canons assist the Court in determining the meaning of a particular statutory provision by focusing on the broader, statutory context." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001). Looking at the entire statutory context and adhering to our obligation to give effect to every word, if possible, that Congress used, there is a strong contextual basis for reading the "and" in § 3553(f)(1) disjunctively. Quite simply, the statutory context establishes that if the "and" is read conjunctively, then subsection (A) is rendered superfluous. Specifically, for each criminal history criterion in subsections (A), (B), and (C), Congress included the language, "as determined under the sentencing guidelines." If a defendant has a prior 3-point offense "as

determined under the sentencing guidelines" under subsection (B), and a prior 2-point violent offense "as determined under the sentencing guidelines" under subsection (C), then it follows that he necessarily has 5 criminal history points—*i.e.*, more than 4 criminal history points, excluding any 1-point offenses for purposes of subsection (A) "as determined under the sentencing guidelines." Thus, if the "and" in § 3553(f)(1) is read conjunctively, then subsection (A) has no independent operation and is superfluous. On the other hand, reading "and" disjunctively avoids rendering subsection (A) superfluous and gives every part of § 3553(f)(1) meaning.

It is a well-established principle that interpretations that cause a provision to have no consequence or to duplicate another provision should be avoided. *See* Scalia & Garner, *supra*, at 174–79. Accordingly, "[i]f a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred." *Id.* at 176; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (explaining that construing a statute so as to avoid rendering any clause, sentence, or word "superfluous, void, or insignificant" "is a cardinal principle of statutory construction" (quotations omitted)). The surplusage canon "is strongest when[, as here,] an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

19-14650                    BRANCH, J., Dissenting                    14

Accordingly, I would hold that the "and" in § 3553f)(1) is disjunctive.[5]

Consequently, I agree with the Seventh Circuit that the conjunctive interpretation advanced by Garcon and adopted by the

---

[5] I note that the distributive approach advanced by the government and endorsed by the Eighth and Fifth Circuits is an equally strong interpretation given the context and structure of § 3553(f)(1), and it renders the same result as the disjunctive reading. As we have recognized, when used as a conjunctive, the word "and" "can be used either 'jointly' (*e.g.*, "both A and B") or 'severally' (*e.g.*, "A and B meaning A or B, or both")." *Shaw*, 605 F.3d at 1254 (alterations adopted) (quotation omitted). Here, if the conjunctive "and" is read in its distributive "several" sense—as the Eighth Circuit and Fifth Circuit have held—then, as with a disjunctive reading of "and," a defendant similarly is ineligible for safety-valve relief if he has any one of the three disqualifying criminal history characteristics in § 3553(f)(1). *See Palomares*, 52 F.4th at 643–45 (holding that the "and" in § 3553(f)(1) is distributive "such that 'does not have' independently applies to each item in" § 3553(f)(1)(A)–(C)); *Pulsifer*, 39 F.4th at 1021 (explaining that as applied to § 3553(f)(1), the "'distributive' sense of the word ['and'] would mean that the requirement that a defendant 'does not have' certain elements of criminal history is distributed across the three subsections, and a defendant is ineligible if he fails any one of the three conditions.").

As the Fifth Circuit explained in *Palomares*, § 3553(f) as a whole "contains a list of affirmative requirements" that a defendant must satisfy to be eligible for safety-valve relief. *Palomares*, 52 F.4th at 644. But the statute "opens with a negative prefatory phrase coupled with an em-dash ('does not have—') followed by a conjunctive list (A, B, and C)." *Id.* at 642. Thus, the grammatical structure of § 3553(f) distributes the phrase "'does not have'" to "each item in the list (*does not have* (A), *does not have* (B), and *does not have* (C))." *Id.* at 643. I agree with the Fifth Circuit that this distributive interpretation is a natural reading of the statute, and it avoids violating the canon against surplusage.

19-14650              BRANCH, J., Dissenting              15

Majority "creates more problems than solutions and renders a portion of the statute superfluous." *Pace*, 48 F.4th at 754; *see also Palomares*, 52 F.4th at 645(explaining that under a conjunctive interpretation of "and" "[§] 3553(f)(1)(A) would be surplusage"). The Majority adheres too rigidly to the ordinary-meaning and consistent usage canons,[6] at the expense of the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31 (quotations omitted); *see also Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (explaining that it is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014))). It is true that the canons of construction "are not mandatory rules." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (quotation omitted). But here, it is *possible* to give effect to every word of a statute—but only by adopting a disjunctive reading of "and." As a result, we should give the canon against surplusage particular weight.

---

[6] Related to the ordinary-meaning canon is the canon of consistent usage, which is the general principle that a term ordinarily bears the same meaning each time it is used in a given statute. Scalia & Garner, *supra*, at 170–73. Similar to the ordinary-meaning canon, "the presumption of consistent usage readily yields to context." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (quotation omitted).

19-14650                BRANCH, J., Dissenting                    16

As for the consistent usage and ordinary-meaning canons, "[s]pecific canons are often countered by some maxim pointing in a different direction." *Id.* (alteration adopted) (quotation omitted). *See also* Scalia & Garner, *supra*, at 59. Such is the case here.[7]

### B. The Majority's conjunctive interpretation renders parts of the statute superfluous

As explained previously, reading "and" in a conjunctive (non-distributive) sense as the Majority does renders subsection (A) superfluous because a defendant who has a prior 3-point offense under subsection (B) and a prior 2-point violent offense under subsection (C) will necessarily have more than 4 criminal history points for purposes of subsection (A). No one disputes that 3+2=5.

---

[7] The Majority contends that its conjunctive interpretation is "buttressed" by section 302(a) of the Senate's Legislative Drafting Manual because it directs that "and" should be used "to indicate that a thing is included in the class only if it meets all of the criteria." Office of Legislative Counsel, U.S. Senate, *Legis. Drafting Manual* § 302(a) (1997). *See* https://law.yale.edu/sites/default/files/documents/pdf/Faculty/SenateOfficeoftheLegislativeCounsel_LegislativeDraftingManual%281997%29.pdf. I am skeptical as a general matter of the value of the legislative drafting manual as an interpretative aid—it is infrequently and rarely relied upon by courts (by my count it has been cited in only 15 published opinions in the Supreme Court and across the circuits). Further, it is clear that Congress does not strictly abide by its provisions. Indeed, the Majority ignores that subsection (c) of section 302 also provides that "[i]n a statement in the negative, 'or' is almost always the correct word . . . ." *Id.* § 302(c). Section 3553(f)(1) is just such a statement in the negative, yet Congress used "and," thereby contradicting the express guidance of the drafting manual. Given that Congress does not adhere to the guidance of the drafting manual, its value as an interpretive aid is negligible at best.

19-14650                BRANCH, J., Dissenting                17

Rather, Garcon and the Majority attempt to avoid the superfluity problem with subsection (A) by proffering the misguided explanation that "prior offenses" which do not score criminal history points for purposes of subsection (A) should nonetheless be scored and considered 3-point offenses or 2-point violent offenses for purposes of § 3553(f)(1)(B) and (C).[8]  Under this sometimes-we-count-sometimes-we-don't theory, a prior offense could be "worth" criminal history points for purposes of § 3553(f)(1)(B) and (C) but actually add no points to the defendant's criminal history score for purposes of § 3553(f)(1)(A) due to either the age of the offense or the single-sentence rule.[9]  I disagree for several reasons.

_____

[8] I note that the unanimous panel in the Eighth Circuit squarely rejected this approach.  *See Pulsifer*, 39 F.4th at 1020.  And it was not endorsed by the majorities in either *Pace* or *Palomares*—however, the dissenting judges in both *Pace* and *Palomares* embrace the same theory that Garcon and the Majority here advance.  *Pace*, 48 F.4th at 763–64 (Wood, J., dissenting in part); *Palomares*, 52 F.4th at 655–56 (Willett, J., dissenting).

[9] Although the Ninth Circuit in *Lopez* held that the "and" in § 3553(f)(1) is conjunctive and that there was no surplusage problem with subsection (A), it did so for very different reasons than the Majority adopts here.  998 F.3d at 436–40, *petition for reh'g en banc pending*.  A majority of the Ninth Circuit held that a three-point offense under subsection (B) could simultaneously satisfy subsection (C) if it was for a violent offense, leaving a defendant with less than 4 criminal history points for purposes of (A)—meaning subsection A was not superfluous.  *Id.* at 440.  Notably, neither Garcon nor the Majority here pursued the *Lopez* line of reasoning in this case.  And for good reason—the problem with the *Lopez* majority's reasoning, as noted by Judge M. Smith, who concurred in part, dissented in part, and concurred in the judgment in *Lopez*, is that the *Lopez* majority's reasoning effectively "rewrites the plain language of subsection (C) to read "a prior violent offense of *at least* 2 points."

19-14650                BRANCH, J., Dissenting                18

First, this approach violates the plain text of the statute.  As discussed previously, for each criterion in subsections (A), (B), and (C), Congress included the language, "as determined under the sentencing guidelines."  18 U.S.C. § 3553(f)(1)(A)–(C).  In other words, Congress's directive is clear—in determining whether "a defendant does not have" (A) "more than 4 criminal history points, excluding any criminal history points from 1-point offenses," (B) "a prior 3-point offense," and (C) "a prior 2-point violent offense," courts should consult and follow the directives of the sentencing guidelines when determining whether the defendant has the disqualifying criminal history specified in § 3553(f)(1)(A)–(C).  *See Gall v. United States*, 552 U.S. 38, 50 n.6 (2007) (explaining in the context of another subsection of § 3553 that "[t]he fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means what it says there."); *Palomares*, 52 F.4th at 646 (explaining that Congress "explicitly incorporated the Sentencing Guidelines by reference" in

---

*Id.* at 445 (M. Smith, J., concurring in part, dissenting in part, and concurring in the judgment) (emphasis added); *see also Palomares*, 52 F.4th at 645–46 (holding that the *Lopez* majority's reasoning "violates the plain wording of § 3553(f)(1)(C)" and disregards the "as determined under the sentencing guidelines" language in the statute).

19-14650                BRANCH, J., Dissenting                19

§ 3553(f)(1)).  The Majority's inclusion of "prior offenses" that do not score criminal history points for purpose of § 3553(f)(1)(B) and (C) violates Congress's plain directive.

Second, the Majority's theory that subsection (A) of § 3553(f)(1) is not superfluous if "and" is read conjunctively is premised on the idea that Congress introduced a new concept of "prior offense" in § 3553(f)(1) because the sentencing guidelines are framed around "prior sentences," not "prior offenses."  I disagree.  The sentencing guidelines clearly contemplate that a "prior sentence" is synonymous with and shorthand for a "prior offense."  The Majority is ignoring that the guidelines define "prior sentence" to mean "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the *instant offense*."  U.S.S.G. § 4A1.2(a)(1) (emphasis added).  In other words, a "prior sentence" previously imposed for conduct not part of the instant offense is a "prior offense."

Indeed, it is clear from other sections of the guidelines that the term "prior sentence" is synonymous with a "prior offense." *See, e.g.*, U.S.S.G. § 2L1.2 cmt. (n.6) (explaining that a departure based on the seriousness of a "prior offense" may be warranted in certain circumstances, including when "the prior conviction is too remote to receive criminal history points (*see* § 4A1.2(e)))"; *Id.* § 4A1.2(a)(2) (explaining that "[p]rior sentences always are counted separately if the sentences were imposed for *offenses* that were separated by an intervening arrest (*i.e.*, the defendant is arrested for

19-14650                BRANCH, J., Dissenting                20

the first offense prior to committing the second offense"))
(emphasis added); *Id.* § 4A1.2(c)(1) (explaining that "[s]entences for
the following *prior offenses* . . . are counted only if . . . .") (emphasis
added).   Furthermore, we have consistently understood "prior
sentences" as used in the guidelines to be synonymous with a
defendant's prior offenses of conviction.   *See United States v.
Glover*, 154 F.3d 1291, 1293 n.3 (11th Cir. 1989) ("Section 4A1.1
assigns criminal history points for certain prior convictions based
on a variety of factors, including the length of the sentence of
imprisonment imposed."); *United States v. Orozco*, 121 F.3d 628,
630 (11th Cir. 1997) ("Under the sentencing guidelines, criminal
history points are assigned for prior criminal convictions.").

Third, the Majority has crafted an unusual approach that
would involve assigning criminal history points to a defendant's
"prior offense" where that offense did not otherwise receive
criminal history points "as determined under the sentencing
guidelines."   But the statute points specifically to the sentencing
guidelines, which do no such thing.   Rather, Chapter 4 of the
guidelines determines, for all circumstances, whether a prior
offense receives criminal history points, and it directs that certain
prior offenses are not counted.   Section 4A1.1 specifies when points
are added to "prior sentences" for purposes of calculating a
defendant's criminal history score:

> The total points from subsections (a) through (e)
> determine the criminal history category in the
> Sentencing Table in Chapter Five, Part A.

(a) *Add* 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) *Add* 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) *Add* 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

(d) *Add* 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) *Add* 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

(emphasis added). And § 4A1.2 and the commentary to § 4A1.1—which operate in tandem and must be read together—provide when sentences are counted or not counted for purposes of § 4A1.1(a)–(e). U.S.S.G. § 4A1.1 cmt. (n.1); *see also United States v. Walker*, 912 F.2d 1365, 1366 (11th Cir. 1990) (holding that "sections 4A1.1 and 4A1.2 must be read together"). Those rules provide that sentences of a certain age are not counted, U.S.S.G. § 4A1.2(e), and that multiple prior sentences imposed on the same day or stemming from the same charging document are treated as a single sentence, *id.* § 4A1.2(a)(2). Thus, the sentencing guidelines

make clear that a court cannot "add" criminal history points for a prior sentence, but then not count those points for purposes of determining the criminal history score.

By including the language "as determined under the sentencing guidelines" in subsections (A), (B), and (C), Congress plainly directed courts to consult and follow the directives of the sentencing guidelines when determining whether the defendant has the disqualifying criminal history specified in § 3553(f)(1)(A)–(C). Based on the statutory language and the text of the guidelines, I do not believe that Congress introduced a new concept of "prior offense" in § 3553(f)(1). Rather, I agree with the Eighth Circuit that Congress's use of "prior offense" in the statute was simply "a form of common sense-shorthand . . . that incorporated the determinations of criminal history points under USSG § 4A1.1." *Pulsifer*, 39 F.4th at 1020. Consequently, the Majority's explanation for why subsection (A) is not superfluous under its conjunctive reading of the "and" in § 3553(f)(1) cannot stand, and it is left with a significant surplusage problem.

### C. In addition to surplusage, the Majority's interpretation presents other fundamental problems

Surplusage is not the only problem with the Majority's interpretation. In order to accept the Majority's sometimes-we-count-sometimes-we-don't theory, we would have to effectively rewrite subsections (B) and (C) in one of two ways. Specifically, for the Majority's theory to work, we would have to remove the "as determined under the sentencing guidelines" language from

19-14650          BRANCH, J., Dissenting          23

§ 3553(f)(1)(B) and (C) because, as discussed previously, under the sentencing guidelines prior offenses of a certain age or that were treated as part of a single sentence do not receive points; therefore, in order for these unscored prior offenses to be a 3-point offense or a 2-point violent offense for purposes of (B) and (C), the "as determined under the sentencing guidelines" language must be removed. Alternatively, if no language is removed, then for the Majority's theory to work, we would need to add language to the statute—*i.e.,*"a prior 3-point offense, as determined under the guidelines, *regardless of whether the offense was counted*" or "a prior 3-point offense as determined *solely under* § 4A1.1 of the guidelines without regard to the counting rules of the guidelines." But adding words to or removing words from a statute is a task which the judiciary is not at liberty to undertake. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009) ("[W]e are not allowed to add or subtract words from a statute; we cannot rewrite it."); *see also Blount v. Rizzi*, 400 U.S. 410, 419 (1971) ("[I]t is for Congress, not this Court, to rewrite the statute."). Thus, § 3553(f)(1) cannot support the strained reading that Garcon and the Majority advance to support its conjunctive "and" interpretation.

While I disagree with much of the Majority's analysis, I note that we agree that its conjunctive (non-distributive) interpretation of "and" does not produce truly absurd results for purposes of invoking the absurdity canon. That is, if the text were clear in supporting the Majority's reading, then the resulting absurdity

19-14650            BRANCH, J., Dissenting                    24

alone would not be a reason to vary from the text. *See Small v. United States*, 544 U.S. 385, 404 (2005) (Thomas, J., dissenting) (explaining that "[w]e should employ [the] canon [against absurdities] only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone" (quotation omitted)).  Nevertheless, I note that under the Majority's interpretation virtually every criminal defendant will pass § 3553(f)(1)'s requirements and qualify for safety-valve relief, including serious, repeat violent offenders.  The only defendants excluded under the Majority's interpretation are those that have more than 4 criminal history points, AND a prior 3-point offense, AND a prior 2-point violent offense—a unique criminal history cocktail to be sure.  In other words, there is no limit on the number of criminal history points or three point-offenses or two-point violent offenses a defendant may have, as long as he does not have all three components of the criminal history cocktail.  *See also Pace*, 48 F.4th at 755 (concluding that the conjunctive interpretation "produces absurd results" because it would "afford leniency to defendants with more serious offenses (those serious enough to receive three criminal history points) while denying safety-valve eligibility to the defendants with less serious offenses that received only two points").

Although the Majority suggests that the government's concern that serious, repeat violent offenders will qualify for safety-

valve relief is unfounded because § 3553(f)(2)–(5) will often disqualify those types of defendants, the Majority ignores that subsections (f)(2)–(5) disqualify defendants based on conduct in connection with the *instant offense*. In contrast, subsection (f)(1) is the only subsection focused on a defendant's *prior criminal history*. Accordingly, (f)(2)–(5) do not operate to disqualify offenders with a serious, repeat, or violent criminal history from safety-valve relief. The application of the Majority's theory to Garcon demonstrates this point. Garcon had three criminal history points, but four 3-point offenses for purposes of subsection (B) (one prior offense that scored 3 points and three older ones that did not), and two 1-point offenses (that did not score points due to age). Yet, he still qualifies for safety-valve relief under the Majority's interpretation. In fact, even if Garcon had 20 3-point prior offenses (totaling 60 criminal history points), he would qualify for safety-valve relief because he does not have a 2-point violent offense. Thus, the government has a legitimate concern that serious, repeat offenders—even defendants with prior convictions for murder— may qualify for safety-valve relief.

Accordingly, although the ordinary meaning and the consistent usage canons of statutory construction advanced by the Majority may counsel in favor of its conjunctive interpretation, those principles of interpretation are cabined by the statutory context and countered by the canon against surplusage, which point us in a different direction. A disjunctive interpretation, by contrast, gives full effect to each of the provisions in § 3553(f)(1),

19-14650                BRANCH, J., Dissenting                26

better adhering to the text of the statute by giving each provision its full effect.  Consequently, the ordinary-meaning canon and the related consistent usage canon marshaled by the Majority must readily yield to context.

### D.  The Rule of Lenity Does Not Apply

As a final point, the Majority concludes that if the canons of statutory construction lend toward two different interpretations, then we are left with an ambiguous statute and the rule of lenity would apply, such that we would be compelled to construe "and" using its conjunctive approach.  The Majority is wrong.

"The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." *United States v. Watts*, 896 F.3d 1245, 1255 (11th Cir. 2018) (quotation omitted).  When the rule of lenity applies, it prevents a court from "giv[ing] the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant." *Burrage v. United States*, 571 U.S. 204, 216 (2014).

"The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of [the rule of lenity], for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998).  The Supreme Court has affirmed repeatedly that the mere fact that canons of statutory construction may point in different directions or that it is possible to articulate a narrower construction of a statute do not render a statute ambiguous for purposes of invoking the rule of

lenity. *Moskal v. United States*, 498 U.S. 103, 108 (1990); *United States v. Shabani*, 513 U.S. 10, 17 (1994); *Smith v. United States*, 508 U.S. 223, 239 (1993). Similarly, "[a] statute is not 'ambiguous' for purposes of lenity merely because there is a division of judicial authority over its proper construction." *Reno v. Koray*, 515 U.S. 50, 64 (1995) (quotations omitted). Rather, the rule of lenity is reserved for when "grievous ambiguity" remains "even *after* resort to 'the language and structure, legislative history, and motivating policies of the statute.'" *Moskal*, 498 U.S. at 108 (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)); *see also Barber v. Thomas*, 560 U.S. 474, 488 (2010); *Chapman v. United States*, 500 U.S. 453, 463 (1991); *Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring). A grievous ambiguity exists when, after applying all the tools of statutory interpretation, "the Court must simply guess as to what Congress intended.'" *Barber*, 560 U.S. at 488 (quoting *Bifulco*, 447 U.S. at 387). As a result, "the rule of lenity *rarely* comes into play." *Shular*, 140 S. Ct. at 788 (Kavanaugh, J., concurring) (emphasis added).

The Majority faithfully cites the grievous ambiguity standard, but then applies it incorrectly. According to the Majority, even though—in its view—numerous tools of statutory construction point toward its interpretation, if the canon against surplusage points toward the government's interpretation, then the rule of lenity would apply and require us to give the word "and" its ordinary, conjunctive meaning. But the grievous ambiguity standard is not the toothless one that the Majority applies. The rule

of lenity has no application in the absence of grievous ambiguity in the statute, and one tool of statutory construction pointing in a different direction does not mean that there is a grievous ambiguity in the statute. *Moskal*, 498 U.S. at 108; *Shabani*, 513 U.S. at 17; *Smith*, 508 U.S. at 239. Here, after considering the structure and context of the statute and applying the traditional tools of statutory construction, a best reading of "and" in § 3553(f)(1) clearly emerges. To the extent there remains ambiguity in § 3553(f)(1), it is far from grievous. Accordingly, the rule of lenity has no role to play in the interpretation of § 3553(f)(1), and I agree with the Fifth and Seventh Circuits on this point. *See Palomares*, 52 F.4th at 647; *Pace*, 48 F.4th at 755 (rejecting the argument that the rule of lenity applied and explaining that the two interpretations of "and" in § 3553(f)(1) were not "equally plausible"). The Majority's dicta about the rule of lenity runs afoul of the Supreme Court's teachings on the rule. If the Majority were to faithfully apply the rule, it too would conclude that the rule has no application here.

## E. Conclusion

A disjunctive interpretation of "and" in § 3553(f)(1) is supported by the traditional rules of statutory construction and gives meaning to every clause of the statute (without requiring the mental gymnastics or rewriting of the statute that the Majority's conjunctive interpretation requires). Accordingly, I would hold that the "and" in § 3553(f)(1) is disjunctive. However, regardless of whether the court reads the "and" in § 3553(f)(1) as disjunctive or distributive, the best reading of § 3553(f)(1) is that it bars safety-

19-14650                BRANCH, J., Dissenting                29

valve relief for defendants who have any one of the enumerated criminal history characteristics in (A)–(C). Thus, Garcon is ineligible for safety-valve relief because he has a disqualifying 3-point offense under § 3553(f)(1)(B), and I would vacate his sentence and remand for resentencing. The Majority's interpretation is contrary to the text of the statute when considered in context and renders portions of the statute superfluous. Consequently, I respectfully dissent.

BRASHER, Circuit Judge, Dissenting:

I join Judge Branch's dissent. I write separately to make a comment on criminal-history-based sentencing and to give some advice to district judges about how to deal with the majority's decision.

Federal sentencing policy is, to a significant extent, based on the idea that we should impose harsher sentences on people with more significant crimes in their past. The upshot is that two people can commit the same crime in the same way in the same place on the same day, but they will receive markedly different sentences if they have committed a different number or type of crimes in the past. This policy is built into the sentencing guidelines, where the severity of sentences increases based on the accumulation of criminal history points. *See* U.S.S.G. § 4.1.1 *et seq.* And it is reflected in important federal statutes that impose mandatory minimums for offenders based on criminal history—the number of crimes committed in the past, the severity of the crime, the violence associated with those crimes, etc. *See, e.g.*, 18 U.S.C. § 924(e); 21 U.S.C. § 841(b)(1)(A)(viii).

There is no question that this sentencing scheme is constitutional. *See Ewing v. California*, 538 U.S. 11 (2003). People who commit more serious and more violent crimes in the past are likely to commit more serious and more violent crimes in the future. And statistics tell us that it takes a longer sentence to deter and rehabilitate a repeat criminal as compared to a first-time

19-14650                    BRASHER, J., Dissenting                    2

offender. So it is perfectly rational to account for an offender's criminal history when imposing a sentence for a new offense.

But I am concerned that the federal courts are increasingly turning this rational system into an arbitrary and capricious game of gotcha. The judicial elimination of the residual clause of the Armed Career Criminal Act, for instance, has led courts to impose its mandatory minimums in a difficult-to-justify way. Here's an example: For purposes of counting previous convictions towards the mandatory minimum, a court must treat a previous conviction for an *attempted* robbery as nonviolent, even if the victim is shot and killed during the attempt; but a court must treat a previous conviction for a *successful* robbery as violent, even if it was committed with a handwritten note. *See United States v. Taylor*, 142 S. Ct. 2015 (2022). I could go on with more examples, but the problem has already been catalogued elsewhere. *See generally id.* at 2026 (Thomas, J., dissenting); *Borden v. United States*, 141 S. Ct. 1817, 1855-57 (2021) (Kavanaugh, J., dissenting).

Now our Court has adopted a reading of the safety valve that makes the most violent and recidivist criminals eligible for a sentence below the mandatory minimum. If two people commit the same crime, why should the one with decades of 3-point violent felony convictions receive a lower sentence than the one whose past crimes are a single 3-point nonviolent offense and a 2-point violent misdemeanor? *See* Rosenbaum, Concurring Op., at 3–5; Branch, Dissenting Op., at 23-26; *United States v. Pace*, 48 F.4th 741, 755 (7th Cir. 2022). The majority opinion has no

19-14650                BRASHER, J., Dissenting                3

justification for such a result, and neither do I. Under the Court's decision, only an unusually hapless defendant with an odd combination of past offenses will be subject to a mandatory minimum because of his criminal history. I fear that, if we keep going down this path, our criminal-history-based sentencing scheme will become so arbitrary as to raise serious questions about its constitutionality. *See Chapman v. United States*, 500 U.S. 453, 464–65 (1991) (under the Due Process Clause of the Fifth Amendment, a sentence may not be based "on an arbitrary distinction"). And I think this possibility is another point in favor of Judge Branch's perfectly reasonable reading of the statute.

With all of that in mind, here is my advice for district judges: The Court's opinion gives you discretion to sentence offenders with serious and violent criminal histories to sentences below the applicable mandatory minimum. But you shouldn't do it. Your job is getting more difficult. Because of this opinion, you will have to calculate sentencing ranges under the guidelines that presume some offenders will be eligible for significantly lower sentences than they should justifiably receive. *See United States v. Quirante*, 486 F.3d 1273, 1275-76 (11th Cir. 2007). But no one in the majority has suggested that you should actually sentence repeat criminals as if they were first-time offenders. "[S]afety valve eligibility does not guarantee [a defendant] a below-statutory minimum sentence; it just gives the court the opportunity to sentence below the minimum if it believes it is appropriate." *United States v. Owens*, 38 F.4th 1, 3 (8th Cir. 2022). "[A] court compelled to disregard a

19-14650                BRASHER, J., Dissenting                    4

mandatory minimum sentence in favor of the guidelines range" by the safety valve "may vary upward to and even past the mandatory minimum point after considering the § 3553(a) factors—so long as the final sentence is reasonable." *Quirante*, 486 F.3d at 1276.

The Court's decision deepens a circuit split that is sure to attract the attention of the Supreme Court. In the meantime, if a criminal defendant has a serious 3-point offense *or* a 2-point violent offense in his past, a district judge should carefully consider exercising his or her discretion to impose a sentence at the otherwise applicable mandatory minimum.

66

felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not less than 20 years'' and inserting ''If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years''; and

(2) in paragraph (2), in the matter following subparagraph (H), by striking ''felony drug offense'' and inserting ''serious drug felony or serious violent felony''.

(c) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

**SEC. 402. BROADENING OF EXISTING SAFETY VALVE.**

(a) AMENDMENTS.—Section 3553 of title 18, United States Code, is amended—

(1) in subsection (f)—

(A) in the matter preceding paragraph (1)—

(i) by striking ''or section 1010'' and inserting '', section 1010''; and

67

(ii) by inserting ", or section 70503 or 70506 of title 46" after "963)";

(B) by striking paragraph (1) and inserting the following:

"(1) the defendant does not have—

"(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

"(B) a prior 3-point offense, as determined under the sentencing guidelines; and

"(C) a prior 2-point violent offense, as determined under the sentencing guidelines;"; and

(C) by adding at the end the following: "Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense."; and

(2) by adding at the end the following:

"(g) INADEQUACY OF CRIMINAL HISTORY.—

"(1) IN GENERAL.—If subsection (f) does not apply to a defendant because the defendant does not meet the requirements described in subsection (f)(1) (relating to criminal history), the court may, upon prior notice to the Government, waive subsection

68

(f)(1) if the court specifies in writing the specific reasons why reliable information indicates that excluding the defendant pursuant to subsection (f)(1) substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

''(2) PROHIBITION.—This subsection shall not apply to any defendant who has been convicted of a serious drug felony or a serious violent felony, as those terms are defined in section 102 of the Controlled Substances Act (21 U.S.C. 802).

''(h) DEFINITION OF VIOLENT OFFENSE.—As used in this section, the term 'violent offense' means a crime of violence, as defined in section 16, that is punishable by imprisonment.''.

(b) APPLICABILITY.—The amendments made by this section shall apply only to a conviction entered on or after the date of enactment of this Act.

**SEC. 403. CLARIFICATION OF SECTION 924(c) OF TITLE 18, UNITED STATES CODE.**

(a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking ''second or subsequent conviction under this subsection'' and inserting ''violation of this sub-

# TITLE III—MISCELLANEOUS

**SEC. 301. ALPHABETIZATION.**

(a) LETTER-BY-LETTER METHOD.—A definition or other term comprising 2 or more words is alphabetized using the letter-by-letter method. For example, "newborn" precedes "New England". Hyphens, slashes, and apostrophes are ignored.

(b) NUMERALS.—A term beginning with a numeral (e.g. "8-hour workday") precedes all terms beginning with a letter.

**SEC. 302. AND; OR.**

(a) IN GENERAL.—In a list of criteria that specifies a class of things—

(1) use "or" between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria; and

(2) use "and" to indicate that a thing is included in the class only if it meets all of the criteria.

(b) DETERMINING THE CORRECT CONJUNCTION FROM CONTEXT.—In most contexts, the correct conjunction can readily be determined from the context, that is, the sense of the legislation and the structure in which the list appears.

(c) STATEMENTS IN THE NEGATIVE.—In a statement in the negative, "or" is almost always the correct

O:\SLC\DRAFTING

word (e.g. The term ''permitted purpose'' does not include training teachers or purchasing books.).

(d) PARTICULAR ISSUES.—

(1) LISTS OF PERMISSIBLE ACTIVITIES.—

(A) PROBLEM.—

(i) IN GENERAL.—In text that provides authority for a person to carry out several activities, it may be unclear whether the person may carry out only 1 (or fewer than all) of the activities.

(ii) EXAMPLE.—The Secretary may make grants to eligible schools to train teachers and purchase books.

(B) SOLUTIONS.—

(i) ONE OR MORE ACTIVITIES.—To permit a person to carry out 1 or more of the activities, use ''or'' as in the following example: ''The Secretary may make grants to eligible schools. Each school shall use the grant to train teachers or purchase books.''.

(ii) ALL ACTIVITIES.—To permit a person to carry out all (and not fewer than all) of the activities, use ''and'' as in the following example: ''The Secretary may make a grant to an eligible school. The



# The First Step Act of 2018 (S.3649) – *as introduced*

*Grassley, Durbin, Lee, Whitehouse, Graham, Booker, Scott, Leahy, Ernst, Klobuchar, Moran, Coons*

## Reducing Federal Recidivism and Crime

- Provides for increased programming designed to reduce recidivism and provides incentives for participation in those programs.

- Implements a post-sentencing dynamic risk assessment system to determine an inmate's risk of committing more crimes upon release from prison.

- Establishes eligibility criteria for and incentivizes participation in evidence-based recidivism reduction programs by allowing prisoners to earn time credits for prerelease custody (defined as residential reentry centers or, for low risk prisoners, home confinement). For example, a prisoner may earn 10 days of time credit for every 30 days of successful participation in a recidivism-reduction program or other eligible activity. However, only prisoners classified as minimum or low risk may redeem these time credits to reduce their sentence.

- In addition to the exclusion preventing all but those classified as minimum or low risk from redeeming time credits, the bill makes clear that violent and high-risk criminals convicted of certain serious offenses are ineligible for the pre-release custody program, including those convicted of crimes relating to terrorism, murder, sexual exploitation of children, espionage, violent firearms offenses, or those that are organizers, leaders, managers, supervisors in the fentanyl and heroin drug trade. Prisoners are also ineligible to apply time credits if subject to a final order of removal under the Immigration and Nationality Act.

## Preparing Inmates for Successful Return to Society

- Provides more meaningful employment and training opportunities for inmates by expanding the federal prison industries program.

- Requires the Bureau of Prisons (BOP) to submit a report and evaluation of the current pilot program to treat heroin and opioid abuse through medication—assisted treatment.

- Extends the compassionate elderly release provision from the *Second Chance Act* that allows the prisoner to request for his or her compassionate release if he or she meets the requirements set out in the law.

- Codifies BOP's rules that generally prohibit the use of restraints on pregnant inmates except those who are an immediate and credible flight risk or threat of harm to herself or others.

- Mandates inmates be housed no more than 500 miles from the prisoner's primary residence and grants authority for prisoners to save earnings in an escrow account used for pre-release expenses, such as transportation and housing.

- Clarifies the formula by which the BOP calculates good time credit (time off for good behavior) in line with original Congressional intent. Under current law, prisoners can earn up to 54 days per year for good behavior in prison, but technicalities in the law keep prisoners on early release from utilizing those days.

## Enhancing Prison Security and Officer Safety

- Requires the Director of BOP to provide a secure storage area outside the secure perimeter for employees to store firearms or to allow for vehicle lock boxes for firearms.

- Directs the Director of BOP to provide de-escalation training as part of the regular training requirements of correctional officers.

## Reforming Federal Criminal Sentencing

- **Clarification of 18 U.S.C. § 924(c)** – *S.1917 Section 104 applied prospectively*: This section clarifies that the enhanced mandatory minimum sentence for using a firearm during a crime of violence or drug crime is limited to offenders who have previously been convicted and served a sentence for such an offense. Previously the courts interpreted this law intended for repeat offenders as applying also to first-time offenders, sometimes requiring courts to impose overly harsh, decades-long sentences for charges brought in a single indictment.

- **Reform to 21 U.S.C. 841 & 851** - *S.1917 Section 101 applied prospectively*: The section focuses the toughest criminal sentencing on serious drug felons and expands the definition of serious violent felons to enhance the sentences of violent criminals. Maximum penalties remain in place. Mandatory minimum penalties are reduced to permit some additional judicial discretion, but not eliminated. The three-strike penalty is reduced from life imprisonment to 25 years, and the 20-year minimum is reduced to 15 years. But while the mandatory minimum for the three-strike penalty is reduced, it is also adjusted to apply to the worst criminals—including, for the first time, to violent felons. The third-strike penalty currently applies     only to offenders with prior drug felonies. This   penalty now applies to all offenders convicted of a serious drug felony or a serious violent felony.

- **Expansion of existing federal safety valve for mandatory minimum sentencing** – S.1917 *Section 102 applied prospectively:* This section expands the existing safety valve to include offenders with up to four criminal history points, excluding 1-point offenses, such as minor misdemeanors. However, offenders with prior "3 point" felony convictions (sentences exceeding one year and one month) or prior "2 point" violent offenses (violent offenses with sentences of at least 60 days) will *not* be eligible for the safety valve absent a judicial finding that those prior offenses substantially overstate the defendant's criminal history and danger of recidivism. Consistent with existing law, a judge cannot apply the safety valve unless the defendant has *fully cooperated* with law enforcement and has not used or threatened to use violence or firearms, caused death or serious bodily injury, or was an organizer, leader, manager, or supervisor of others in connection with the offense.

- **Retroactive Application of the Fair Sentencing Act of 2010** – *S.1917 Section 105*: This section allows prisoners sentenced before the *Fair Sentencing Act of 2010* reduced the 100-to-1 disparity in sentencing between crack and powder cocaine to petition the court for an individualized review of their case. This reform would bring sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed.

## Other Reforms

- **Immigration Fix.** The bill clarifies that prisoners subject to a final order of removal under 8 U.S.C. 1101, including illegal immigrants, are not eligible to apply time credits.

- **Fentanyl and Heroin Exclusion.** Upon input from law enforcement, the bill excludes prisoners from receiving time credits under the First Step Act who were convicted of fentanyl or heroin offenses involving 5 and 10 year mandatory minimums and who were organizers, leaders, managers or supervisors in the offense.

- **Firearm Offense Exclusion.** Upon input from law enforcement, the bill excludes prisoners from receiving time credits under the First Step Act who brandish or discharge firearms. Those who committed a felony with possession of a firearm are also excluded if they are repeat offenders who have already taken advantage of recidivism programming under the First Step Act.

- **Crimes Against Children Exclusion.** Offenders who have committed serious crimes against children will not be able to shorten their sentences. This includes anyone convicted of sex trafficking of children (18 U.S.C. § 1591), sexual abuse of a child (18 U.S.C. §§ 2243, 2244(c)), child pornography offenses (18 U.S.C. §§ 2251, 2252, 2252A, 2260), buying and selling of children (18 U.S.C. § 2251A), or the recruitment of child soldiers (18 U.S.C. § 2442).

11/15/2018